SCHWETSCHENAU, et al., Appellees,

v.

WHITFIELD, Appellant.

[Cite as *Schwetschenau v. Whitfield,* 177 Ohio App.3d 155, 2008-Ohio-3164.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–070633.

Decided June 27, 2008.

---

18. *Mayfield–Dorsh, Inc. v. S. Euclid* (1981), 68 Ohio St.2d 156, 157, 22 O.O.3d 388, 429 N.E.2d 159.

Honerlaw & Honerlaw Co., L.P.A., and Michael Honerlaw, for appellees.

Droder & Miller Co., L.P.A., A. Dennis Miller, and W. John Sellins, for appellant.

---

SYLVIA SIEVE HENDON, Presiding Judge.

{¶ 1} Plaintiffs-appellees Drs. P. Robert Schwetschenau, H. Paul Lewis, and Chin Tai Lee sued defendant-appellant Dr. Melvin Whitfield for contribution, claiming that Whitfield was partially responsible for payments the plaintiffs had made on two bank loans. Following a bench trial, the court found for the plaintiffs and entered judgment against Whitfield for $87,950.50. Whitfield now appeals. We affirm the court's judgment in part, but reverse the damage award, and enter a reduced judgment.

## Five Doctors Borrow Money

{¶ 2} Neurosurgeons Schwetschenau, Lewis, Lee, and Whitfield, along with Guy M. Sava—who was not a party to this action—were in medical practice together. Each also owned 20% of Island Miniature Golf, Inc., and financed this business venture through two bank loans. On one promissory note, Schwetschenau had signed as "president" of Island Miniature Golf, Inc., and Lewis had signed as "secretary." The remaining doctors signed individually. On the other note, each doctor signed individually, without reference to Island Miniature Golf. The notes indicated that each maker was jointly and severally liable for the total amounts due. At trial, Lewis testified that the doctors had had a "gentlemen's agreement" that each would be responsible for 20% of the loan payments.

{¶ 3} Bookkeeper Barb Mitchell testified that she had written the check for the loan payments each month and that she had always made payment from the Island Miniature Golf account. Mitchell further testified that she had sometimes had to ask the plaintiffs for money or had had to transfer money out of two other corporations—which had been wholly owned by the plaintiffs—into the miniature golf account to cover these payments. The plaintiffs claimed that they should have been partially reimbursed for these payments because any cash they had

given the corporation was "theirs," as was the money taken from their other corporations.

{¶ 4} The plaintiffs also sought reimbursement for a proportionate share of the balance that had remained on the loans after they had sold Island Miniature Golf. According to Lewis, to retire this debt, each of the plaintiffs and Sava had written personal checks for $11,500.

## Standard of Review

{¶ 5} In one assignment of error, Whitfield asserts that the trial court erred in entering judgment against him. He essentially challenges the sufficiency of the evidence to support the court's judgment holding him liable in contribution, as well as the damage award. In reviewing the sufficiency of the evidence, we must affirm the court's judgment if there was "some competent, credible evidence going to all the essential elements of the case." [1]

## Joint–and–Several Liability and Contribution

{¶ 6} We find no error in the trial court's conclusion that the plaintiffs could seek contribution from Whitfield. R.C. 1303.14(B) provides that a party having joint and several liability who pays an instrument "is entitled to receive from any party having the same joint and several liability contribution in accordance with applicable law." [2] The Ohio Supreme Court has defined "contribution" as follows: "Contribution, when it exists, is the right of a person who has been compelled to pay what another should have paid in part to require partial (usually proportionate) reimbursement and arises from principles of equity and natural justice." [3]

{¶ 7} Here, Whitfield, the plaintiffs, and Sava each signed the loan documents as borrowers. According to the terms of the notes, the doctors had agreed to be jointly and severally liable for the loans.[4] And Lewis testified that the five doctors had had an understanding that each would pay 20% of the loan. We hold that this was sufficient evidence to support the trial court's determination that

---

1. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578; see also *State v. Wilson,* 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, at ¶ 26 (holding that the tests for weight and sufficiency of the evidence in a civil case merge).

2. See also *Popa v. Crawford* (June 7, 1978), 7th Dist No. 77 C.A. 91, 1978 WL 215003; *Darrah v. Leakas* (Jan. 27, 1994), 10th Dist. No. 93AP–952, 1994 WL 21861.

3. *Travelers Indemn. Co. v. Trowbridge* (1975), 41 Ohio St.2d 11, 70 O.O.2d 6, 321 N.E.2d 787, paragraph two of the syllabus, overruled on other grounds in *Motorists Mut. Ins. Co. v. Huron Rd. Hosp.* (1995), 73 Ohio St.3d 391, 653 N.E.2d 235.

4. See R.C. 1303.14(A).

the plaintiffs could seek contribution from Whitfield for money that they had paid toward the loans.

{¶ 8} Whitfield argues otherwise. He first contends that the trial court erred in finding him liable in contribution because the debt had been a corporate debt, not his personal debt. But the loan documents indicated that Whitfield had signed the notes as a promiser in his individual capacity. The trial court therefore properly concluded that Whitfield had been a maker of the notes.[5] The fact that the loan proceeds had been used to finance a business venture did not alter Whitfield's obligation. This argument has no merit.

{¶ 9} Next, Whitfield asserts that the trial court erred in finding that the plaintiffs could seek contribution from him because there was no written agreement stating that each doctor was responsible for 20% of the loans. Contribution, however, is an equitable remedy and is not based in contract.[6] It does not require a written agreement. Instead, the obligation to contribute arises from the nature of the relationship between the parties.[7] In this case, Whitfield's obligation arose out of his status as a co-maker of notes that provided for joint and several liability. This argument also lacks merit.

### Plaintiffs Cannot Recover for Island Golf's Expenditures

{¶ 10} We do find error, however, in the trial court's award of over $87,000 in damages. Although the record is unclear, it appears that the trial court awarded the plaintiffs a share of the monthly loan payments. But Mitchell testified that she had always made these payments from the Island Miniature Golf account. Island Miniature Golf was not a party to this action. As we have already noted, contribution "is the right of a person who has been compelled to pay what another should have paid in part to require partial (usually proportionate) reimbursement * * *."[8] A corporation is a "person" under Ohio law.[9] It was the corporation that potentially stood to recover the money paid on the loans at issue. Inexplicably, the corporation was never a party to this action. The plaintiffs were not entitled to be reimbursed for payments made by the corporate entity.

---

5. R.C. 1303.01(A)(7).

6. See *Travelers*, supra, paragraph two of the syllabus.

7. *Rell v. Combes* (1927), 25 Ohio App. 476, 480, 159 N.E. 133.

8. See *Travelers*, supra.

9. R.C. 1.59(C) and 1701.01(G). Cf. R.C. 1701.13(A) (providing that a corporation may sue and be sued).

{¶ 11} The plaintiffs, of course, urge this court to affirm the judgment. They claim that the money in the Island Miniature Golf account was "theirs" because (1) they had made cash contributions to the account and (2) Mitchell sometimes transferred money into that account from two other corporate accounts—both of which were wholly owned by the plaintiffs. This argument misses the point. A corporation and its shareholders are separate persons under the law.[10] And absent extreme circumstances, which were not demonstrated here, a corporation's assets and liabilities are not legally interchangeable with those of its shareholders.[11]

{¶ 12} In sum, the trial court erred to the extent that it credited the plaintiffs with loan payments that they had not personally made.

### Whitfield's Obligation

{¶ 13} There is some competent, credible evidence in the record, however, to support a reduced award. Lewis testified, and the trial court found, that the plaintiffs and Sava had paid off an outstanding balance on the loans. To this end, according to Lewis, each of the four doctors had written a personal check for $11,500. If Whitfield had contributed his proportionate share, each doctor would have paid only $9,200. On the state of this record, each plaintiff was entitled to $2,300 from Whitfield, for a total of $6,900 in damages.

{¶ 14} For the foregoing reasons, we hereby reduce the trial court's damage award from $87,950.50 to $6,900. In all other respects, the court's judgment is affirmed.

Judgment accordingly.

DINKELACKER and CUNNINGHAM, JJ., concur.

---

10. *Lawson & Covode v. Farmers' Bank of Salem* (1853), 1 Ohio St. 206, 211, 1853 WL 18.

11. *Belvedere Condominium Owners' Assn. v. R.E. Roark Cos. Inc.* (1993), 67 Ohio St.3d 274, 287, 617 N.E.2d 1075; see generally *State ex rel. Atty. Gen. v. Std. Oil Co.* (1892), 49 Ohio St. 137, 30 N.E. 279.