**MANTIA, Appellant,**

v.

**HOUSE, Appellee.**

[Cite as *Mantia v. House,* 178 Ohio App.3d 763, 2008-Ohio-5374.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 22265.

Decided Oct. 10, 2008.

Marc N. Greenberg, for appellant.

Robert L. Mues, for appellee.

WALTERS, Judge.

{¶ 1} Larry Mantia appeals from a judgment of the Dayton Municipal Court, finding that he failed to sustain his burden of proof in establishing that three checks made payable to his granddaughter, Julie C. House, in the total amount of $9,302, were loans that House was obligated to repay. Larry claims that the trial court erred in failing to find that a contract existed based upon the language on the face of the checks indicating that they were loans. Because we find that the evidence established a contract, we reverse the judgment of the trial court.

{¶ 2} In early 1998, Larry and Ruth Mantia discovered and met their long-lost grandchild, the defendant, Julie House. After reuniting with Julie, the Mantias discovered that she was deeply in debt for credit-card charges. The Mantias, after discussing this with Julie and her husband, agreed to loan the Houses approximately $46,000 in late 1998. In order to secure this loan to House, the Mantias had both Julie and David House sign a promissory note, bearing interest

at seven percent, and requiring payments of interest and principal of $704 per month until it was repaid. The Mantias also required David to obtain a life-insurance policy, payable to the Mantias, in the amount of $50,000, as further security for the indebtedness. And the Mantias gave the Houses an amortization schedule for the loan. At this time, David was employed, and Julie was enrolled in Wright State University School of Nursing. The $46,000 loan was repaid in full to the Mantias.

{¶ 3} During the same time period as the loan for the $46,000, Julie informed the Mantias that she was going to have to drop out of nursing school because of her financial situation. As a result of this conversation, Ruth wrote a check to Julie, on August 8, 2000, in the amount of $2,000. The face of the check, in the memo line, indicated "personal loan." On November 20, 1998, Ruth wrote another check to Julie, in the amount of $5,000, with a notation on the memo line of "loan." And, on August 22, 1999, Ruth wrote a check to Julie, in the amount of $2,302, with a notation on the memo line of "loan for Wright State." Julie acknowledged the receipt of the two checks totaling $4,302 for her tuition at Wright State, but claimed that those checks were gifts from the Mantias. She also claimed that the $5,000 check in November 1998 was a part of the $46,000 loan that has been repaid.

{¶ 4} After August 1999, the Mantias never made any demand upon Julie to make payments on the alleged loan of $9,302. Ruth died in May 2004. On October 1, 2006, Larry filed suit, seeking judgment against Julie in the amount of $9,302, plus seven percent interest from the dates of the checks. The matter proceeded to a bench trial. The trial court, determining that the $5,000 check in November 1998 was not a part of the $46,000 loan, found that the plaintiff had failed to meet his burden of proof and that there had been no meeting of the minds as to the necessary elements to establish an agreement to repay. The court specifically found that while Larry testified that he thought the interest rate should be seven percent as in the other loan, there was no evidence that there was any communication or agreement as to interest. The court also found that there was no evidence as to when repayment was to commence and at what intervals and amounts payments were to be made.

{¶ 5} Larry has filed this timely appeal, setting forth one assignment of error for our review.

## Assignment of Error

{¶ 6} "The court erred by failing to find that a contract existed based on the acceptance of a check with language on its face whose plain meaning can only be that the money was intended to be a loan to the recipient."

{¶ 7} In his sole assignment of error, Larry contends that the word "loan" on the memo line of a check is sufficient in and of itself to establish a contract to repay the amount of the check. Julie contends that the trial court was correct in finding that the evidence was insufficient to support Larry's claim, and she argues further that even if a contract were deemed to have existed, it is barred by the statute of frauds.

{¶ 8} " ' "A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." *Perlmuter Printing Co. v. Strome, Inc.* (N.D.Ohio 1976), 436 F.Supp. 409, 414. A meeting of the minds as to the essential terms of the contract is a requirement for enforcing the contract. *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations* (1991), 61 Ohio St.3d 366, 369, 575 N.E.2d 134.' " *Minster Farmers Coop. Exchange Co., Inc. v. Meyer*, 117 Ohio St.3d 459, 2008-Ohio-1259, 884 N.E.2d 1056, ¶ 28, quoting *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16.

{¶ 9} In a contract that is not for goods, the essential terms are, generally, the parties to the contract and its subject matter. *Nilavar v. Osborn* (1998), 127 Ohio App.3d 1, 13, 711 N.E.2d 726. Moreover, the terms of a contract are sufficiently certain if they " 'provide a basis for determining the existence of a breach and for giving an appropriate remedy.' " *Mr. Mark Corp. v. Rush, Inc.* (1983), 11 Ohio App.3d 167, 169, 11 OBR 259, 464 N.E.2d 586, quoting Restatement of the Law 2d, Contracts (1981) 92, Section 33.

{¶ 10} In *Regina Apts., Inc. v. Village Green, Inc.* (1978), 60 Ohio App.2d 345, 14 O.O.3d 301, 397 N.E.2d 420, cited by Julie, the Tenth District Court of Appeals held in a similar fact pattern that where a writing of the word "loan" on a check is unclear as to whether the amount payable constitutes a loan to the payee, and supplemental evidence would be required to complete the terms of whatever understanding the parties may have had, it is not a written contract within the meaning of R.C. 2305.06, so as to be governed by a 15–year period of limitation. However, that decision was rendered within the context of numerous intercompany loan transactions between the parties, which made it impossible to determine from the face of the check whether the loan was owed by the payee or was a repayment of a loan owed to the payee. There is no similar evidence in this case that Julie ever extended any credit to the Mantias.

{¶ 11} In another similar fact pattern, the Eleventh District considered the import of a notation on two checks with the language "Loan 60 days" and "Loan-to be paid back by September 30, 1992." *Polk v. Robinson*, Lake App. No. 2001–

L–119, 2003-Ohio-604, 2003 WL 262382. Again, in the context of a statute-of-limitations determination, the court in *Polk* found, in contrast to *Regina*, that the checks as written encompassed all of the elements of a contract, and therefore constituted a written contract. In *Polk*, the relationship between the parties did not evidence any other existing or past loan transactions between the parties. We believe the reasoning of *Polk* should be applied herein.

{¶ 12} While the individual check documents herein do not possess all the elements necessary for the interpretation of the contract, the essential elements are present. The parties to the agreement are identified, the amount of the indebtedness is determined, and the evidence establishes that no payments have been made on the loans. And, it is well settled that if the court can determine "that the parties intended to be bound," it may fashion those less essential terms that were omitted to "reach a fair and just result." *Litsinger Sign Co. v. Am. Sign Co., Inc.* (1967), 11 Ohio St.2d 1, 14, 40 O.O.2d 30, 227 N.E.2d 609.

{¶ 13} And, even if there had been no meeting of the minds, as the trial court found, when a contract fails for a lack of "meeting of the minds," equity should be imposed to prevent an unjust enrichment. *Myers v. Good,* Ross App. No. 06CA2939, 2007-Ohio-5361, 2007 WL 2897753, at ¶ 12. "The proper remedy is quantum meruit, or the value of the benefit conferred on the other party." *Id,* citing *Caras v. Green & Green* (Jun. 28, 1996), Montgomery App. No. 14943, 1996 WL 407861.

{¶ 14} For the foregoing reasons, the assignment of error is sustained.

{¶ 15} Finally, while the issue has not yet been raised in either the trial court or this court, we believe that the trial court ought to consider, on remand, the additional issue of whether all necessary parties are before the court. Civ.R. 19 provides that "[a] person who is subject to service of process shall be joined as a party to the action if * * * (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may * * * (b) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest * * *." Civ.R. 12(H)(2) further provides that "a defense of failure to join a party indispensable under Rule 19, * * * may be made in any pleading permitted or ordered under Rule 7(A), or by motion for judgment on the pleadings, or at the trial on the merits." Because the within action is prosecuted solely by and in the name of Larry Mantia, and because there has been no joinder of the estate of Ruth Mantia, all of the necessary parties may not be before the court.

{¶ 16} The judgment of the Dayton Municipal Court is reversed, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

BROGAN and FAIN, JJ., concur.

SUMNER E. WALTERS, J., retired, of the Third District Court of Appeals, sitting by assignment.