[Cite as *Warmack v. Arnold*, 195 Ohio App.3d 760, 2011-Ohio-5463.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| WARMACK ET AL., | : | APPEAL NO. C-100718 |
|  |  | TRIAL NO. 10CV-13581 |
| Appellees, | : |  |
| v. | : | *OPINION ON* |
|  |  | *RECONSIDERATION.* |
| ARNOLD, | : |  |
| Appellant. | : |  |

Civil Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Reversed and Final Judgment Entered

Date of Judgment Entry on Appeal:  October 26, 2011

Zeehandelar Sabatino & Associates, L.L.C., and Steven J. Zeehandelar, for appellees.

Timothy Arnold, pro se.

Per Curiam.

**{¶ 1}** Defendant-appellant, Timothy Arnold, appeals the judgment of the Hamilton County Municipal Court in favor of plaintiff-appellee, State Auto Insurance Company of Ohio ("State Auto"), on its claim for subrogation. The judgment was entered following a bench trial.

**{¶ 2}** In its complaint against Arnold, State Auto asserted that it had provided collision-insurance coverage to plaintiff-appellee Richard L. Warmack. State Auto alleged that pursuant to that insurance policy, it had been "required to and did pay to and/or on behalf of its Insured the sum of $4,075.00 under the Collision coverage provision and is thereby subrogated in that amount, less a net salvage recovery of $772.77."

**{¶ 3}** At trial, the parties stipulated to the following facts. On March 12, 2009, Arnold was operating a motor vehicle and caused damage to Warmack's parked vehicle. Arnold then went to Warmack's home and admitted that he was responsible for the damage. The two exchanged their automobile-insurance information and their telephone numbers.

**{¶ 4}** Warmack testified that Arnold had returned to his home with a check for $250. According to Warmack, he told Arnold that he could not accept it. Warmack also testified that his car had been insured by State Auto and that he had presented a claim for the damages that had been caused by Arnold. State Auto had declared the car a total loss and had issued Warmack a check for $4,075, the value of his car.

**{¶ 5}** Counsel for State Auto asked Warmack the following question: "To the extent payments were made by State Auto, did you give them a right to pursue the party whom they felt was responsible for the accident? That is, did you give State Auto a right of subrogation, a right to settle those payments?" Warmack replied that he had.

2

**{¶ 6}** In addition, State Auto placed into evidence Warmack's certificate of title, photographs of damage, a market-value report for the car, a salvage receipt, and a copy of a draft issued by Tom Duffy Insurance to Warmack for $4,075. The draft contained the language "This check represents payment of your claim for the coverage indicated" and "Loss Date 03-12-2009." Warmack testified that the draft had been issued to him by State Auto.

**{¶ 7}** Arnold testified that he had presented a check for $250 to Warmack, but that Warmack had wanted cash rather than a check. According to Arnold, he paid Warmack $250 cash. In addition, Arnold submitted into evidence a document signed by Warmack after the collision that listed Warmack's name and address and contained the following language: "To Whom it May Concern: I, Richard Warmack, hereby attest that Tim Arnold is not responsible financially, legally, or criminally for the damage done to my Cadillac on 03/12/2009. I do fully accept his $250 offer to completely fix all damages; even if estimates may exceed this amount. I will not seek further insured remedies, reconciliation or any compensation whatsoever. I do solemnly relieve Tim Arnold of any debt, responsibility or liability that he may carry. Respectfully resolved, * * * Richard Warmack."

**{¶ 8}** Following the trial, the trial court awarded State Auto $3,302.23, the difference between the amount it had paid to Warmack for the vehicle's loss and the amount it had recovered for the salvage of the vehicle.

**{¶ 9}** Arnold appealed, arguing that the trial court erred in granting judgment for State Auto. As noted by State Auto in its appellate brief, Arnold was "essentially claiming that the judgment against him was against the manifest weight of the evidence."

**{¶ 10}** "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr.*

*Co.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus. This standard "tends to merge the concepts of weight and sufficiency." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, at ¶ 26. See also *Schwetschenau v. Whitfield*, 177 Ohio App.3d 155, 2008-Ohio-3164, 894 N.E.2d 96, at ¶ 5; *State v. Gebbie*, 1st Dist. No. C-060505, 2007-Ohio-3089, at ¶ 9. In our review, we considered the sufficiency of the evidence presented by State Auto with respect to its subrogation rights.

{¶ 11} On August 26, 2011, we reversed the trial court's judgment, holding that State Auto had failed to submit evidence to support its claim that Warmack had assigned State Auto his rights to recover from Arnold. We relied on *Aetna Cas. & Sur. Co. v. Hensgen* (1970), 22 Ohio St.2d 83, 258 N.E.2d 237, wherein the Supreme Court of Ohio rejected the defendant tortfeasor's argument that an insurance company could not maintain a tort action against him without establishing the existence of an insurance policy and the payment of a premium by the alleged insured. *Hensgen* held that because the insurance company had established the existence of a subrogation and assignment agreement that had been signed at the same time as the insurer's payment to the insured, the insurance company was not required to establish the existence of an insurance policy. Id. at 90.

{¶ 12} Specifically, *Hensgen* held that "[w]here an insurer proves that it paid the full amount to the owner of property for damage thereto by fire and received from the owner at that time a writing signed by such owner stating that such owner 'subrogates' such insurer 'to all the rights, claims and interests which' such owner 'may have against any person or corporation liable for the loss,' such insurer may maintain an action to recover from one who negligently caused such loss, without establishing the existence of any policy of insurance or the payment of any premium thereon." Id. at paragraph five of the syllabus.

4

{¶ 13} In this case, State Auto did not place into evidence either its insurance policy with Warmack or a writing signed by Warmack upon State Auto's payment to him for the damage to his car that indicated his agreement to subrogate State Auto to his rights against Arnold for the loss. Accordingly, we held that State Auto had not established that Warmack had assigned to it his rights to recover from Arnold.

{¶ 14} In response, State Auto filed a motion to reconsider, bringing to our attention *Travelers Indemn. Co. v. Brooks* (1977), 60 Ohio App.2d 37, 395 N.E.2d 494, and *Grange Mut. Cas. Co. v. King* (Nov. 30, 1982), 10th Dist. No. 82AP-569, cases involving the application of the doctrine of equitable subrogation, an issue not argued in the initial appeal.

{¶ 15} An insurer's right to be subrogated to the right of its insured arises either from the right of conventional subrogation, that is subrogation by agreement of the parties, or equitable subrogation by operation of law. Conventional subrogation is based on the contractual obligations of the parties. *Blue Cross & Blue Shield Mut. of Ohio v. Hrenko* (1995), 72 Ohio St.3d 120, 121, 647 N.E.2d 1358. On the other hand, equitable subrogation applies when one person is subrogated to certain rights of another so that the person is substituted in the place of the other and succeeds to the rights of the other. *Ohio Dept. of Taxation v. Jones* (1980), 61 Ohio St.2d 99, 100-101, 399 N.E.2d 1215. The doctrine of equitable subrogation is largely concerned with " 'the prevention of frauds and relief against mistakes.' " *Jones* at 102, quoting *Canton Morris Plan Bank v. Most* (1932), 44 Ohio App. 180, 184, 184 N.E. 765.

{¶ 16} *Brooks* was decided by the Sixth Appellate District. In that case, the insurer established that it had issued an automobile insurance policy to its insured and that the policy had contained a provision that the insurer would be subrogated to all claims, demands, and causes of action arising under it to the extent of the payment made. When the insured's car was damaged by a third-party tortfeasor, the

5

insurer paid its insured under the terms of the policy. The trial court awarded judgment in favor of the insurer in its action against the tortfeasor. *Brooks*, 60 Ohio App.2d at 37, 395 N.E.2d 494.

{¶ 17} *Brooks* rejected the tortfeasor's claim that the trial court had erred by awarding damages to the insurer, as subrogee. The court noted that the insurer had been subrogated pursuant to the subrogation clause in the policy once the insurer had made payment to its insured under the policy. Id. at 38. The court stated: "Even without any subrogation clause, Travelers had an equitable right of subrogation once the payment was made. See 30 Ohio Jurisprudence 2d 811, 812, Insurance, Section 886, which in part provides: '[t]he right of an insurer to be subrogated to the rights of the insured may be either the right of conventional subrogation—that is, subrogation by agreement between the insurer and the insured—or the right of equitable subrogation, by operation of law, upon the payment of the loss. Although many policies now provide for subrogation, and thus determine the right of the insurer in this respect, the equitable right of subrogation is the legal effect of payment, and inures to the insurer without any formal assignment or any express stipulation to that effect in the policy. It has accordingly been said that the insurer's right of subrogation does not depend on any agreement, but arises out of the relation of the parties. It follows that an insurance company need not prove the existence of a subrogation agreement in an action brought by the insurer and the insured against a defendant wrongdoer for damages suffered by the insurer and insured, and recovery may be had despite the lack of such proof, since the wrongdoer is not prejudiced thereby.' " Id. at 38-39, 395 N.E.2d 494.

{¶ 18} In *Grange*, the Tenth Appellate District held that Grange did not have to introduce into evidence an insurance policy, an assignment, or a subrogation agreement to demonstrate its right to recover from a tortfeasor who had damaged its insured's car. *Grange*, 10th Dist. No. 82 AP-569, at 4. The court held that sufficient

6

evidence of subrogation had been presented through the testimony of its insured that he was insured by Grange, which had paid him for the repair of his car, and through the testimony of a Grange representative as to the existence of the policy and the amount of the repair bill. Id. at 3-4.

{¶ 19} As *Grange* stated, "While the policy or agreement may constitute the best evidence, oral testimony as to its existence entered without objection is sufficient to prove the existence of the subrogation right. More importantly, where, as here, both the injured party and the insurance company claiming subrogation are parties to the action, there can be no prejudice to the defendant caused by the failure to introduce the insurance policy itself. The matter of subrogation is between [the insured and his insurer], with defendant [tortfeasor] having an interest therein only in the event of the possibility of [a] double recovery." Id. at 4.

{¶ 20} At the trial in this case, Arnold did not object to Warmack's testimony that he had presented a claim to his insurer, State Auto, for the damage to his car, that State Auto had paid him the value of his car, and that he had given State Auto a right of subrogation. While this testimony was not sufficient evidence for purposes of conventional subrogation, it was sufficient evidence for purposes of equitable subrogation. State Auto, having paid the damages suffered by Warmack, had an equitable right of subrogation, and was not required to present a formal subrogation agreement or Warmack's insurance policy into evidence. See *State Farm Mut. Auto. Ins. Co. v. Scott* (Dec. 20, 1993), 12th Dist. No. CA93-05-013; *Allstate Ins. Co. v. LaCivita* (Aug. 9, 1996), 11th Dist. No. 94-P-0118. Accordingly, we grant State Auto's motion for reconsideration, vacate our August 26, 2011, decision, and substitute this opinion for the vacated decision.

{¶ 21} Nevertheless, our resolution of the issue of subrogation does not change the outcome of the appeal.

{¶ 22} State Auto argues that Arnold had failed to prove his affirmative defense of waiver because he did not establish that Warmack had intended to waive his right to recover damages.

{¶ 23} Waiver is a voluntary relinquishment of a known right. *White Co . v. Canton Transp. Co.* (1936), 131 Ohio St. 190, 2 N.E.2d 501, paragraph one of the syllabus. The party asserting the defense of waiver bears the burden to prove it by a preponderance of the evidence, by showing "a clear, unequivocal, and decisive act of the party against whom the waiver is asserted, showing such a purpose or acts amounting to an estoppel on his part." Id. at paragraph four of the syllabus; *Kool, Mann, Coffey & Co. v. Castellini Co.* (Aug. 2, 1995), 1st Dist. No. C-930951.

{¶ 24} In this case, Warmack executed an express written waiver when he settled his claim against Arnold. A settlement agreement is a contract designed to terminate a claim by preventing or ending litigation. *Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson, Inc.* (1996), 74 Ohio St.3d 501, 502, 660 N.E.2d 431; *In re All Kelley & Ferraro Asbestos Cases*, 104 Ohio St.3d 605, 2004-Ohio-7104, 821 N.E.2d 159, ¶ 28. Moreover, the law highly favors settlement agreements. *Ferguson* at 502.

{¶ 25} The interpretation of a written contract is a question of law, which we review de novo. See *Ruehl v. Air/Pro, Inc.*, 1st Dist. Nos. C-040339 and C-040350, 2005-Ohio-1184; *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684. In construing the terms of a written agreement, the primary objective is to give effect to the intent of the parties, which can be found in the language that they chose to employ. *In re All Kelley* at ¶ 29; *Harry S. Peterson Co., Inc. v. Detzel Constr.* (Mar. 13, 1998), 1st Dist. No. C-961125. Where a contract's terms are clear and unambiguous, a court need not go beyond the plain language of the agreement to determine the rights and obligations of the parties. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51,

8

53, 544 N.E.2d 920; see also *Detzel*, 1st Dist. No. C-961125. In this case, the plain language of the settlement agreement clearly and unambiguously evinced Warmack's intention to release Arnold from further liability for the damage to Warmack's car.

{¶ 26} Subrogation is the right of an insurer to be put in the position of its insured in order to pursue recovery from a third party legally responsible to the insured for a loss paid by the insurer. *Hensgen*, 22 Ohio St.2d at 90. Because an insurer is subrogated to or an assignee of only the rights of its insured or assignor, the rights of an insurer are no greater than those of its insured. See *Auto. Ins. Co. v. Pennsylvania RR Co.* (1938), 133 Ohio St. 449, 14 N.E.2d 613. Consequently, a release granted by an insured is an effective defense against later actions by an insurance company seeking to enforce its subrogation rights. See *Bogan v. Progressive Cas. Ins. Co.* (1988), 36 Ohio St.3d 22, 30, 521 N.E.2d 447, overruled on other grounds by *Ferrando v. Auto-Owners Mut. Ins. Co.,* 98 Ohio St.3d 186, 2002-Ohio-7217, 781 N.E.2d 927. In this case, Warmack's grant of a full release to Arnold effectively extinguished State Auto's subrogation right to recover from Arnold any money paid to Warmack. See id. Accordingly, we hold that the trial court erred by entering judgment in favor of State Auto.

{¶ 27} Based on the foregoing, we sustain the sole assignment of error and enter judgment in favor of Arnold on State Auto's subrogation claim.

Judgment reversed
and final judgment entered.

SUNDERMANN, P.J., and HENDON and CUNNINGHAM, JJ., concur.

9