[Cite as *JAG Imperial, L.L.C. v. Literski*, 2012-Ohio-2863.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| JAG IMPERIAL, LLC, d.b.a. CINCINNATI GUTTER & ROOF PROTECTION, | : | APPEAL NO. C-110760 TRIAL NO. 10CV-25509 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| COLIN LITERSKI, | : | |
| and | : | |
| DIANE LITERSKI, | : | |
| Defendants-Appellants. | : | |

Civil Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal:  June 27, 2012

*Karen Comisar Prescott*, for Plaintiff-Appellee,

*Sams, Fischer, Packard & Schuessler, LLC*, and *Dwight A. Packard, II*, for Defendants-Appellants.

Please note:  This case has been removed from the accelerated calendar.

**FISCHER, Judge.**

{¶1} Defendants-appellants Colin and Diane Literski appeal the judgment of the Hamilton County Municipal Court denying their counterclaims and entering judgment in favor of plaintiff-appellee JAG Imperial, LLC, doing business as Cincinnati Gutter & Roof Protection ("JAG"), against Mr. Literski for $8,556.50, plus interest. Because we determine that the trial court erred in awarding JAG $731.50 that was not authorized by the parties' contract, we reverse the judgment of the trial court as to this amount and instruct the court on remand to enter judgment for JAG in the amount of $7,825, plus interest.

### Factual and Procedural Background

{¶2} The Literskis contacted JAG in the summer of 2009 to provide an estimate for installing a new roof on their home and for repairs to the interior of their home, after their home had been damaged by a windstorm following Hurricane Ike in the fall of 2008. JAG provided the Literskis with an estimate for the roof, but told them that JAG did not do interior work. JAG referred the Literskis to Simon Trejo. Trejo provided a $500 estimate for the Literskis' interior work and also provided an unsolicited estimate for the roofing work, which JAG had already provided. Trejo's roof estimate was lower than JAG's.

{¶3} Mr. Literski told JAG's manager, Jamie Cox, that Trejo had tried to undercut JAG's estimate for the roofing, but that the Literskis did not want JAG to confront Trejo because they still wanted Trejo to perform the interior work. Cox relayed this information to the owner of JAG, John Allen, who then confronted Trejo. Trejo subsequently stopped communicating with the Literskis.

2

{¶4} JAG eventually entered into a contract with the Literskis to repair their roof for $10,325. According to Cox's trial testimony, the contract had been based upon an estimate of 33 roofing squares, because of the insurance adjuster's estimate, but Cox had told Mr. Literski that the project would likely take 35 squares. The contract contained a clause that "[a]ny alterations or deviations from above specifications involving extra costs will be executed only upon written orders, and will become an extra charge over and above the estimate."

{¶5} The roofing project took JAG an additional 2.66 squares to complete, so JAG invoiced the Literskis for an additional $731.50 above the outstanding contract balance of $7,825. Cox testified that he had asked Mr. Literski for the Literskis' insurance adjuster's contact information so that JAG could submit a written request for supplemental payment to the insurance company for the extra squares, but that Mr. Literski had refused to give Cox the adjuster's information. Allen testified that JAG had attempted to schedule a time with Mr. Literski for Trejo to perform the interior work and to collect the unpaid contract balance, but that Mr. Literski had claimed he had been having personal problems and could not pay at the time.

{¶6} Mr. Literski testified, however, that he had entered into a separate written agreement with Cox, on behalf of JAG, whereby JAG promised to perform the interior repairs for $500 if Trejo would not do the work. The Literskis produced this agreement at trial, and Mrs. Literski signed the agreement as a witness. Cox testified that he had not signed the agreement produced by the Literskis, but that he had signed an agreement for JAG to do the interior work if Trejo did not, however, that agreement had not contained a price term or date. Allen then testified that Mr.

Literski had eventually told Allen that Mr. Literski would take care of the interior repairs himself. Mr. Literski testified that he had to hire another company to do the interior repairs at a cost of $4,425.

{¶7} JAG brought suit against the Literskis in Hamilton County Municipal Court, alleging a breach of contract and an action on an account against Mr. Literski and unjust enrichment against both Mr. and Mrs. Literski. The Literskis answered and counterclaimed for breach of the agreement to perform the interior work for $500 that Trejo did not perform. Prior to trial, Diane Literski moved for summary judgment as to JAG's sole claim against her, which the trial court granted. The remaining claims proceeded to a bench trial.

{¶8} At trial, the court allowed the Literskis to amend their counterclaim to add a claim under the roofing contract's warranty. Mr. Literski testified that, after litigation had begun between the parties, the skylight in their home had leaked and had caused damage to the interior of their home. The Literskis had the leak repaired by Deer Park Roofing, and they produced an invoice from Deer Park Roofing for $200. The invoice contained a statement that the skylight had been "re-flashed." The Literskis also produced a proposal from McCoy & Sons Painting and Wallpapering for repairs. In rebuttal, Cox testified that, if faulty flashing by JAG were to blame, then the skylight would have leaked within the first few rains, not after a year and a half. Cox also testified that, in his experience, a skylight leak is caused 99 percent of the time by a bad seal.

{¶9} In its findings of fact and conclusions of law, the trial court found that JAG had not entered into a contract with the Literskis to perform the interior work that Trejo was supposed to have performed. The trial court also found that, as to the

4

Literskis' counterclaim under the warranty, the skylight leak could have been caused by something other than faulty roofing. The court also found that the Literskis had failed to notify JAG of the leak, as required by the warranty, which would then have given JAG the opportunity to inspect the leak. Therefore, the court denied the Literskis' counterclaims and entered judgment for JAG for $8,556.50, plus interest. This appeal ensued.

### *First Assignment of Error*

{¶10} The Literskis argue in their first assignment of error that the trial court erred in entering final judgment against Mr. Literski on JAG's breach-of-contract claim because the trial court erroneously awarded $731.50 to JAG for work performed without a written order, which contradicted the plain language of the parties' contract. JAG argues that this court should review the trial court's judgment under a manifest-weight-of-the-evidence standard, meaning, as the supreme court recently clarified, whether the trial court's judgment was supported by the greater amount of credible evidence, and whether the plaintiff met its burden of persuasion by a preponderance of the evidence. *SST Bearing Corp. v. Twin City Fan Companies, Ltd.*, 1st Dist. No. C-110611, 2012-Ohio-2490, ¶ 16, citing *Eastley v. Volkman*, ___ Ohio St.3d ___, 2012-Ohio-2179, ___ N.E.2d ___, ¶ 19.

{¶11} The interpretation of a written contract is in the first instance a question of law that we review de novo. *Warmack v. Arnold*, 195 Ohio App.3d 760, 767, 2011-Ohio-5463, 961 N.E.2d 1165 (1st Dist.). If a contract is clear and unambiguous, then the plain language of the contract governs the parties' obligations. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 53, 544 N.E.2d 920 (1989).

{¶12} The parties' contract provided that "[a]ny alterations or deviations from above specifications involving extra costs will be executed only upon written orders, and will become an extra charge over and above the estimate." JAG employee Cox testified that the contract entered into between JAG and Mr. Literski for $10,325 had been based upon an estimate of approximately 33 roofing squares, because of the insurance adjuster's estimate, but that Cox had told Mr. Literski that the project would likely take 35 squares. The project had taken more squares to complete than originally estimated, and thus JAG had added an additional $731.50 to the original contract price. Cox testified that he had asked Mr. Literski for his insurance adjuster's contact information so that JAG could submit a written request for supplemental payment for the extra squares. Mr. Literski had refused to give Cox the adjuster's information, Cox testified, so JAG had not made a written request for supplement.

{¶13} The unambiguous language of the parties' agreement required that any deviation from the contract involving an extra cost "be executed only upon written orders[.]" Any prior oral agreements between the parties regarding how JAG would perform in the event that more squares were needed to do the job was inadmissible under the parol evidence rule. *See Galmish v. Cicchini*, 90 Ohio St.3d 22, 27, 734 N.E.2d 782 (2000) (stating that, under the parol evidence rule, "absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements.").

{¶14} Here, JAG performed work that deviated from the original contract, and that work was performed before placing a written order, in contravention of the

6

contract. JAG nonetheless argues that Mr. Literski prevented Cox from submitting a written request for supplement to the insurance adjuster by refusing to provide the facsimile number of the adjuster to Cox. Even if Mr. Literski refused to provide the adjuster's contact information after JAG installed the additional squares, this would not have prevented JAG from complying with the express requirement in the contract that JAG place the written order before performing the additional work.

{¶15} Therefore, because JAG acted outside the scope of the plain language of the contract by performing additional work before placing a written order, JAG cannot recover the cost of the additional work from the Literskis. *See, e.g., Quadtek, Inc. v. Foister*, 12th Dist. No. CA2004-09-112, 2005-Ohio-4191, ¶ 23. We sustain the Literskis' first assignment of error to the extent that we hold that the trial court erred in awarding JAG an additional $731.50 above the contract balance of $7,825. The assignment of error is overruled in all other respects.

### Second Assignment of Error

{¶16} The Literskis argue in their second assignment of error that the trial court erred in denying their counterclaims. Under this assignment of error, the Literskis first challenge the trial court's determination that no contract existed between JAG and the Literskis for interior work in their home, despite testimony from both Mr. Literski and Cox that they had entered into an agreement for the interior work, although they did not agree on the terms. Whether or not a contract exists in this instance is a question of fact, which we review under a manifest-weight-of-the-evidence standard. *See Oglebay Norton Co. v. Armco*, 52 Ohio St.3d 232, 235, 556 N.E.2d 515 (1990).

7

{¶17} Mr. Literski testified that he and Mrs. Literski had signed an agreement with Cox that if Simon Trejo did not perform the interior work for $500, then JAG would do it. The purported agreement was admitted into evidence. Cox testified that he had not signed the document that the Literskis alleged he had signed. Cox testified that he had signed an agreement for JAG to do the interior work if Trejo did not, however, that agreement had not contained a price term or date.

{¶18} The trial court found that no contract had existed between the Literskis and JAG for the interior work, despite Cox's testimony that he had signed an agreement for JAG to perform the interior work if Trejo did not. In order to form a services contract, the essential terms are, in general, the parties to the contract and the subject matter, and the contract terms are sufficiently definite if those terms provide a source for determining whether a breach has occurred and provide for a remedy. *Mantia v. House*, 178 Ohio App.3d 763, 2008-Ohio-5374, 900 N.E.2d 641, ¶ 9 (2d Dist.). Therefore, at a minimum, JAG and the Literskis had satisfied the essential elements of a services contract when they had agreed that JAG would perform the interior work if Trejo did not.

{¶19} Even though a contract had existed, the burden remained on the Literskis to prove the remaining elements of their breach-of-contract claim— including breach by JAG and damages. Allen testified that he had requested a time from Mr. Literski for Trejo to perform the interior work, but that Mr. Literski continually rebuffed JAG's requests, stating that he had had personal problems. Eventually, Mr. Literski had told Allen that he would do the interior work himself.

Therefore, the trial court's judgment denying the Literskis' counterclaim for breach of contract for the interior work was not against the manifest weight of the evidence.

{¶20} The Literskis next challenge the trial court's denial of their claim under JAG's roofing contract warranty. The Literskis argue that the trial court erred in finding that they failed to prove JAG's workmanship caused the leak around the skylight. As with the Literskis' denial of their breach-of-contract claim, we review the trial court's judgment under a manifest-weight-of-the-evidence standard. *Eastley*, 2012-Ohio-2179, ¶ 19.

{¶21} The trial court accepted the testimony of Cox that, in his experience, a skylight leak is caused 99 percent of the time by a bad seal, and that if faulty flashing were to blame, then the skylight would have leaked within the first few rains, not after a year and a half, when the Literskis had reported the problem. The Literskis argue that Cox's testimony was improper and speculative because Cox never inspected the Literskis' leak. Admissibility of opinion testimony is committed to the discretion of the trial court, and we will only reverse the trial court's decision if it amounts to an abuse of discretion resulting in prejudicial error. *E.g.*, *State v. Barton*, 71 Ohio App.3d 455, 469, 594 N.E.2d 702 (1st Dist.1991).

{¶22} We cannot determine that the admission of Cox's testimony resulted in prejudicial error. The only evidence that the Literskis put forth in support of their breach-of-warranty claim was the following: the testimony of the Literskis that their skylight had leaked a year and a half after JAG had installed their roof, and that the leak had caused damage to the interior of their home; an invoice from Deer Park Roofing stating that the skylight had been "re-flashed"; and a proposal from McCoy & Sons for painting and wallpaper for the damage caused by the leak. The statement

contained in the Deer Park Roofing invoice that the skylight had been re-flashed was hearsay. *See* Evid.R. 801(C). In the absence of any statements made by Deer Park Roofing regarding the cause of the leak, the Literskis failed to prove their breach-of-warranty claim by a preponderance of the evidence. Therefore, the trial court's decision denying the Literskis' warranty claim was not against the manifest weight of the evidence. Consequently, we overrule the Literskis' second assignment of error.

### Conclusion

{¶23} In conclusion, that portion of the trial court's judgment awarding JAG $731.50 over and above the contract balance of $7,825 is reversed because JAG acted beyond the plain language of the contract in performing additional work without a written order. We affirm the remainder of the trial court's judgment. Therefore, we reverse the trial court's award of $8,556.50 for JAG, and we instruct the trial court on remand to enter judgment for JAG in the amount of $7,825, plus interest.

Affirmed in part, reversed in part, and cause remanded.

SUNDERMANN, P.J., and HENDON, J., concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.