[Cite as *Metal Interests, Ltd. v. Interesting Invests., L.L.C.*, 2019-Ohio-3942.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| METAL INTERESTS, LTD., | : | APPEAL NO. C-180518 |
| | | TRIAL NO. A-1701910 |
| Plaintiff-Appellee, | : | |
| | | |
| vs. | : | *O P I N I O N.* |
| | | |
| INTERESTING INVESTMENTS, LLC, | : | |
| | | |
| and | : | |
| | | |
| WILLIAM GLICK, | : | |
| | | |
| Defendants-Appellants. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  September 27, 2019

*Rebold Larkin Murray, LLC*, *Kyle D. Murray* and *Andrew J. Ferguson*, for Plaintiff-Appellee,

*Arnold Law Firm, LLC, James S. Arnold* and *Brittany Born*, for Defendants-Appellants.

**MYERS, Presiding Judge.**

{¶1}   This is an appeal of the judgment of the Hamilton County Court of Common Pleas in favor of a commercial building owner against its tenant.  Because the tenant failed to transfer a liquor permit to the landlord at the termination of the lease as required under the lease's clear and unambiguous terms, we affirm the trial court's judgment ordering the tenant to take the necessary steps to transfer the permit.

*Background*

{¶2}   Metal Interests, Ltd., ("Metal Interests"), owned a commercial property consisting of a tavern and several apartments.  Steven Campbell, the president of Metal Interests, was the sole member of Interesting Investments, LLC, ("Interesting Investments").  Interesting Investments operated the tavern on the premises and was the holder of an Ohio liquor permit.

{¶3}   On March 11, 2011, Campbell sold his membership interest in Interesting Investments to Mark Hoffman, who then leased the tavern premises from Metal Interests.  Near the end of 2011, Campbell informed his attorney, Greg Nolan, that Hoffman wanted out of the tavern business, so Nolan prepared documents for the transfer of the business back to Campbell.

{¶4}   On December 30, 2011, Hoffman and Campbell entered into a repurchase agreement whereby Hoffman sold his sole membership interest in Interesting Investments back to Campbell for $500.  On the same date, Campbell filed an application with the Ohio Division of Liquor Control for the change of LLC membership interest in Interesting Investments from Hoffman to Campbell so that the liquor permit could transfer back to him.

2

{¶5}   On February 1, 2012, while the application was pending with the Division of Liquor Control, Interesting Investments entered into a short-term "Management Contract" with William Glick whereby Glick was employed to operate the tavern.   By its terms, the management contract would terminate upon the approval or denial by the Division of Liquor Control of the transfer of the membership interest from Hoffman to Campbell.

{¶6}   On February 2, 2012, Campbell entered into a "Membership Interest Sale" agreement with Glick, whereby Glick purchased Campbell's entire membership interest in Interesting Investments and its assets, including commercial equipment and its liquor permit.   The purchase price was $67,500, $15,000 of which was paid upon execution of the purchase agreement.   Glick executed a promissory note for the remaining $52,500, which was secured by a mortgage on certain real estate.

{¶7}   On the same day, Metal Interests and Interesting Investments entered into a lease agreement for the tavern portion of Metal Interests's commercial property.   The lease period was for five years, with an option to renew.   Paragraph 16 of the February lease stated:

> CONDITION OF THE LEASE.   Both parties are aware that this premises is designed as a tavern/restaurant.   Should Tenant complete the terms of this Lease and pay the Promissory Note in full, he may remove the Ohio Liquor Permit to a new location of his choosing.
>
> During the term of the Lease and the Promissory Note, the Ohio Liquor Permit Number 4146809 D2 D2X D3 D6 shall remain at the lease premises.
>
> Should tenant not complete the terms of the Lease and/or not pay the Promissory Note in full, Tenant agrees to transfer to the Landlord or another legal entity the Landlord may chose [sic], the Ohio Liquor Permit Number 4146809 D2 D2X D3 D6.

{¶8}   In the meantime, however, Nolan realized that the parties should not have executed the documents before the Division of Liquor Control approved the transfer of the membership interest from Hoffman back to Campbell.  Nolan testified that without the approval of the transfer, Campbell would not be able to transfer the membership interest to Glick.  So he informed Glick and Campbell that they would have to wait until after the membership interest in Interesting Investments transferred from Hoffman to Campbell.  According to Nolan, the transfer occurred on March 23, 2012.

{¶9}   On March 29, 2012, Glick and Campbell appeared at Nolan's office where they executed another "Membership Sale Agreement," which contained the same terms as the one dated February 2.  The parties also executed another five-year lease for the tavern property and certain equipment, ending on January 31, 2017.  Paragraph 16 of the March lease differed from the one executed in February in that it provided:

> CONDITION OF THE LEASE.   Both parties are aware that this premises is designed as a tavern/restaurant.  It is imperative for the Landlord to maintain an Ohio Division of Liquor Control Permit at such leased premises.  At the signing of this Lease an Ohio Division of Liquor Control Permit #4146809 D2 D2X D3 D6 is assigned to this leased premises.  **At the termination of this lease or any other surrender of the leased premises, Tenant agrees to transfer to Landlord or another legal entity Landlord may form the Ohio Division of Liquor Control Permit assigned to the permit premises.  In exchange for such transfer Landlord agrees to pay tenant the sum of $10,000** minus any unpaid rent owed to Landlord and minus any taxes, unemployment, withholding, or workers compensation owed to the State of Ohio in order to secure

the successful transfer of the Ohio Division of Liquor Control permit from Tenant to Landlord. Such sum shall be paid by Landlord to Tenant within 3 business days of the successful transfer.

(Emphasis added.)

{¶10} In October 2016, Nolan sent a letter to Glick on Campbell's behalf to advise Glick that Metal Interests did not intend to renew the lease and that Interesting Investments had failed to maintain insurance on the property as required under the lease. Nolan also demanded that Glick vacate the premises by January 31, 2017, and he informed Glick that the balance due on the promissory note would be due at that time.

{¶11} On January 23, 2017, Glick and Interesting Investments, through their attorney James Arnold, notified Campbell that they were exercising their option to renew the lease agreement and that they would be delivering a check for the February 2017 rent.

{¶12} On January 25, 2017, on behalf of Campbell and Metal Interests, Nolan wrote to Arnold and asked him to provide proof of insurance for the period of the lease and proof that Interesting Investments had exercised its option to renew the lease in writing, 120 days prior to January 31, 2017, as required by the lease. He stated that he had instructed Campbell not to accept the February rent payment. On February 2, 2017, Metal Interests gave Interesting Investments a notice to vacate the premises by March 4, 2017.

{¶13} On March 3, 2017, Glick paid the $30,755.23 balance owed on the promissory note, and vacated the tavern premises the following day. He refused, however, to transfer the liquor permit back to Metal Interests.

{¶14} On April 6, 2017, Metal Interests sued Interesting Investments and Glick for breach of the lease agreement and for property damage to the premises and sought injunctive relief to compel the return (buyback) of the liquor permit.

Interesting Investments and Glick filed an answer and a counterclaim asserting that Metal Interests had breached the lease by refusing to reimburse them for utility payments for the apartments on the premises.[1]

{¶15} Following a bench trial, the trial court entered judgment in favor of Metal Interests on its breach-of-contract claim and ordered Interesting Investments and Glick to take the necessary steps to transfer the liquor permit back to Metal Interests, as required under the March lease. The court entered judgment in favor of Interesting Investments and Glick on Metal Interests's property-damage claim, and in favor of Metal Interests on the breach-of-contract counterclaim.

### *The Appeal*

{¶16} In a single assignment of error, Interesting Investments and Glick argue that the trial court's judgment ordering them to take steps to transfer the liquor permit to Metal Interests was based upon insufficient evidence, was against the manifest weight of the evidence, and was contrary to law. They contend that the evidence demonstrated that they had not bargained for the condition in the March lease that required the return of the liquor permit to Metal Interests. They also claim that the evidence demonstrated that it would be unconscionable to enforce the condition requiring return of the permit. In addition, they contend that Metal Interests's attempt to attach a security interest in the liquor permit is not authorized by law.

{¶17} When reviewing an appeal from a civil bench trial, we apply a manifest-weight standard of review. *United States Fire Ins. v. Am. Bonding Co., Inc.*, 1st Dist. Hamilton Nos. C-160307 and C-160317, 2016-Ohio-7968, ¶ 16. We determine whether the trial court's judgment was supported by the greater amount of credible evidence, and whether the plaintiff met its burden of persuasion by a

---

[1] Interesting Investments and Glick abandoned their other counterclaims at trial.

preponderance of the evidence. *JAG Imperial, L.L.C. v. Literski*, 1st Dist. Hamilton No. C-110760, 2012-Ohio-2863, ¶ 10; *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 19.

{¶18} Where, however, the trial court's judgment is based upon a question of law, we review the trial court's determination of that issue de novo. *United States Fire Ins.* at ¶ 17. The interpretation of a written contract is a question of law that we review de novo. *JAG Imperial* at ¶ 11. In construing the terms of a written agreement, the primary objective is to give effect to the parties' intent, which can be found in the language they chose to use in the agreement. *Warmack v. Arnold*, 195 Ohio App.3d 760, 2011-Ohio-5463, 961 N.E.2d 1165, ¶ 25 (1st Dist). If a contract's terms are clear and unambiguous, then the plain language of the contract governs the parties' rights and obligations. *Id.*

### The Contract

{¶19} We begin our analysis with the four corners of the contract and find that the language is clear and unambiguous: it requires tenant to transfer the liquor permit back to the landlord at the termination of the lease. In consideration, landlord will pay tenant $10,000. The undisputed evidence is that the lease terminated. Therefore, in the absence of some legal defense, tenant is obligated to return the permit and landlord is obligated to buy it back.

### Unilateral Modification without Consideration

{¶20} Glick and Interesting Investments first argue that Nolan, on behalf of Campbell, had unilaterally modified a material term in Paragraph 16 of the February lease in the subsequent March lease without Glick's knowledge or assent. They contend that the modification was made without new consideration because they gained "no benefit from the change."

7

{¶21} The trial court determined that, despite Glick's testimony to the contrary, Glick had signed the March lease. That finding is supported by the record. At trial, Nolan, Campbell, and Nolan's administrative assistant testified that they witnessed Glick's signing of the March lease at Nolan's office. In addition, although the trial court determined that no consideration was required for the modification, Paragraph 16 in the March lease clearly provides for adequate consideration by requiring Metal Interests to pay $10,000 for the transfer of the liquor permit.

{¶22} Consequently, we hold that the trial court's judgment was not against the manifest weight of the evidence. In addition, because the terms of the March lease were clear and unambiguous, we hold that the trial court properly concluded that Interesting Investments and Glick had breached the lease by failing to effectuate the transfer of the liquor permit to Metal Interests at the termination of the lease.

### *Unconscionability*

{¶23} Glick and Interesting Investments also argue that enforcement of Paragraph 16 in the March lease would be unconscionable. They contend that Nolan unilaterally modified Paragraph 16 into a "punitive term," without discussion or negotiation, resulting in unfair surprise.

{¶24} The party asserting unconscionability of the contract has the burden to prove that the agreement is both procedurally and substantively unconscionable. *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 34. When considering procedural unconscionability, courts look to the circumstances surrounding the parties' bargaining, such as their age, education, intelligence, business experience, and who drafted the contract. *Id.* at ¶ 44. When considering whether a contract is substantively unconscionable, courts assess the fairness and reasonableness of the terms of the particular contract. *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶ 33;

8

*Harbour Portfolio VII, LP v. Pulley*, 1st Dist. Hamilton Nos. C-150080 and C-150090, 2015-Ohio-4399, ¶ 7.

{¶25} A determination of whether a written contract is unconscionable is a question of law that we review de novo. *See Taylor* at ¶ 37. When a trial court makes factual findings supporting its determination that a contract is not unconscionable, those factual findings should be reviewed with great deference. *Id.* at ¶ 38.

{¶26} Here, the trial court considered the conflicting testimony about whether each party had been represented by Nolan, and noted that Campbell testified that both he and Glick had paid for Nolan's assistance in drafting the lease. In addition, the court found that Glick was not an unsophisticated party who had been unfairly disadvantaged in the bargaining process. The court noted that before he purchased Campbell's business, Glick had owned his own business for five years and had experience with contract negotiation. Following our review of the record, we hold that the March lease was not procedurally unconscionable.

{¶27} Although Interesting Investments and Glick contend that Paragraph 16 was "clearly overly burdensome and punitive" to them, they point to no evidence in the record to support that assertion. Moreover, the contract provided $10,000 consideration to them in return. We find that they failed to meet their burden to demonstrate that the March lease was substantively unconscionable.

*Security Interest*

{¶28} Finally, Interesting Investments and Glick argue that Metal Interests attempted to attach a security interest to the liquor permit for performance of the lease, and that enforcement and execution of that security interest should be denied as a matter of law. However, the record demonstrates that there was no agreement between the parties that treated the liquor permit as collateral. The contract is clear and unambiguous and does not create a security interest.

9

*Conclusion*

**{¶29}** Under the clear and unambiguous terms of the March lease, Interesting Investments and Glick agreed to transfer the liquor permit to Metal Interests at the termination of the lease. When they failed to do so, the trial court properly determined that that a breach occurred and ordered them to take the necessary steps to accomplish the transfer. Therefore, we overrule the sole assignment of error and affirm the trial court's judgment.

Judgment affirmed.

**BERGERON** and **WINKLER, JJ.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.