DECISION AND JUDGMENT ENTRY
{¶ 1} Albert Poling ("Albert") appeals the decision of the trial court, granting the motion of his siblings, Calvin L. Poling, Oliver C. Poling, and Gladys L. Carr ("Calvin, Oliver, and Gladys") for summary judgment, alleging that material issues of fact remain. Specifically, Albert alleges that: 1) he is entitled to ownership of the real estate currently held by his father's estate based upon the doctrine of part performance; 2) there has been fraud and self-dealing in the administration of his father's estate; and, 3) a genuine issue of material fact remains as to the ownership of the personal property included in the estate inventory. Because we find that Albert failed to file his claim regarding the real estate within the time provided by R.C. 2117.02, we find that it is barred as a matter of law. Therefore, we decline to address the merits of his part performance claim. Because we find that Albert failed to timely raise the issue of fraud, we find that he has waived the issue as both a defense and a cause of action.
 {¶ 2} However, because we find that Calvin, Oliver, and Gladys have failed to submit evidence to prove that Father owned the disputed personal property at the time of his death, and construing the evidence most strongly in favor of Albert, we find that there is a genuine issue of material fact with regard to ownership of the personal property. Accordingly, we overrule Albert's first two assignments of error, sustain Albert's third assignment of error and remand this cause to the trial court for further proceedings consistent with this opinion.
 I. {¶ 3} Calvin M. Poling ("Father") died testate on February 3, 2001. Pursuant to the terms of his last will and testament, Father desired that all four of his children be named as co-executors of his estate. Father's will also provided for each of the four children to be equal beneficiaries of his estate. On or about February 28, 2001, Calvin, Gladys and Oliver filed an application for authority to administer Father's estate in the Fairfield County Probate Court, apparently due to the fact that Father was living in an assisted-living facility in that county at the time of his death.
 {¶ 4} Very early in the administration of the estate, it became apparent that Albert's interests were contrary to the interests of Calvin, Oliver, and Gladys. Accordingly, on March 5, 2001, the attorney representing the estate recommended that Albert obtain separate counsel to protect and pursue his interest in the estate. Albert elected to obtain separate representation, and on March 16, 2001, his counsel filed a motion to change the venue to Hocking County, alleging, inter alia, that it was Father's county of residence and the location of his assets. Based upon Albert's motion, the Fairfield County Probate Court relinquished and the Hocking County Probate Court accepted jurisdiction.
 {¶ 5} On July 6, 2001, the parties filed and the probate court approved the application for authority to administer Father's will in Hocking County, naming Calvin, Oliver, Gladys, and Albert as co-executors and equal beneficiaries of his estate. Then Calvin, Oliver, and Gladys filed an inventory. The inventory included three parcels of real estate and miscellaneous farm equipment that Albert claims he owns. The record reflects that, at the time of Father's death, Father was the record owner of all three disputed parcels of real estate. The trial court conducted a hearing on the inventory on November 26, 2001.
 {¶ 6} On the date of the hearing, Albert filed exceptions to the inventory, challenging the inclusion of the personal property, namely the items of farm equipment that Albert alleged he owned. Albert also excepted the inclusion of an undeveloped lot in Logan, Ohio, alleging that Father had given him the property as a gift.
 {¶ 7} The magistrate conducting the hearing on the estate's inventory dismissed Albert's exceptions because he did not timely file them. Albert, in turn, filed objections to the magistrate's decision, alleging that Father had committed fraud, in intercepting checks payable to Albert, and that the other beneficiaries had constructive notice of his exceptions prior to the filing deadline such that the trial court should conduct an evidentiary hearing on the exceptions. The trial court overruled Albert's exceptions and adopted the magistrate's decision.
 {¶ 8} The parties filed an amended inventory on May 17, 2002. After several continuances, the trial court conducted a hearing on July 1, 2002, and approved the amended inventory. No one filed exceptions to the amended inventory.
 {¶ 9} Calvin, Oliver, and Gladys filed a complaint to sell the real estate to pay the debts of the estate on June 20, 2002 in the probate court. In response to the complaint, Albert filed an answer denying that Father died owning the three parcels of real estate. Additionally, Albert filed a counterclaim and cross-claim against Calvin, Oliver, and Gladys as co-executor's of Father's estate and individually. Albert's first claim was a request for a declaratory judgment declaring that he was the true owner and entitled to immediate possession of certain farm equipment and machinery. Albert's second claim alleged that Father promised that if Albert quit his employment and worked Father's farm, Father would give him the farm when Father passed away. Albert alleged that he performed under the "oral contract," and, further, that Father breached said contract by devising the real estate to his four children equally. Accordingly, Albert requested specific performance of the alleged oral contract to convey real estate.
 {¶ 10} In his third and fourth causes of action, Albert requested a declaratory judgment that he was the true owner of the various disputed parcels of real estate and that he was entitled to immediate possession of said real estate. Albert realleged each of his four claims as cross-claims against his siblings in their individual capacities.
 {¶ 11} Calvin, Oliver, and Gladys, as co-executors and individually, filed a motion for summary judgment on September 19, 2002. In their motion, they alleged that: 1) Albert failed to file his claims against the estate within three months of his appointment as co-executor as required by R.C. 2117.02, and that his claims are therefore barred by the statute of limitations; 2) Albert's claims of ownership of the real estate are barred by the Statute of Frauds; and, 3) Albert has admitted in various court filings during the course of the estate's administration that the real estate is property of the estate, and that he should be bound by those "admissions."
 {¶ 12} In his response to the motion for summary judgment, Albert alleged that Calvin, Oliver, Gladys and their counsel acted inappropriately. Albert implied that they fraudulently filed documents in Fairfield County with signatures purporting to be those of himself and his counsel, when Albert claimed he did not personally sign the documents, and further, the documents were submitted to the court with his attorney's signature before he retained counsel. Additionally, Albert alleged that Calvin, Oliver, and Gladys' attempts to include the farm machinery constituted self dealing to make up for money Father lost in the stock market, and to make up for the fact that they believed Father had done more for Albert during his lifetime than he had done for the other children.
 {¶ 13} Albert also alleged that the doctrine of part performance removed the "oral contract" for the transfer of real estate from the Statute of Frauds. He claimed that he had worked the land for a number of years, had allegedly turned down a career opportunity in order to continue his work on the farm in reliance on Father's alleged promise, and had paid the real estate taxes on the subject real estate for a number of years. Finally, Albert argued that his signature on the amended inventory, various letters written by his counsel, and a written offer of settlement did not constitute an admission that the subject real and personal property belonged to the estate.
 {¶ 14} The trial court held that R.C. 1335.04 and R.C. 2107.04
applied to Albert's claim. As there was no evidence of a written instrument or memorandum transferring title or promising to transfer title, and further there was no evidence of a writing demonstrating a contract to make a will, Albert's claims to the real estate were barred. The trial court found that there was no evidence of fraud by the various co-executors, their counsel, or Father, and that Albert had ample time to file "objections" (sic) to the inventory, but failed to do so in a timely fashion. Accordingly, the trial court found that all of "the real estate and personal property listed on the Amended Inventory of the Estate of Calvin M. Poling, deceased, is personal and real property of the Estate of Calving (sic) M. Poling subject to the terms of the Last Will and Testament of Calvin M. Poling." The trial court concluded that no genuine issue of material fact remained, and that Calvin, Oliver, and Gladys were entitled to judgment as a matter of law. Because the estate's debts and expenses exceeded the value of the personal property, the trial court ordered the real estate sold to pay said debts and expenses.
 {¶ 15} Albert timely appealed, raising the following assignments of error: "I. The doctrine of part performance operates to allow enforcement of the contract between Albert M. Poling and Calvin M. Poling for the real estate; II. Self-dealing on the part of Albert M. Poling's siblings requires the application of equitable principles to allow suit on his counterclaim to proceed; and III. The appellees have failed to provide any proof that the personalty claimed by Albert but included with the estate is or was owned by the decedent."
 II. {¶ 16} Summary judgment is appropriate when the court finds that the following factors have been established: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his or her favor. Civ.R. 56. See Bostic v. Connor (1988), 37 Ohio St.3d 144,146; Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66;Morehead v. Conley (1991), 75 Ohio App.3d 409, 411. "In reviewing the propriety of summary judgment, an appellate court independently reviews the record to determine if summary judgment is appropriate. Accordingly, we afford no deference to the trial court's decision in answering that legal question." Morehead v. Conley, 75 Ohio App.3d at 411-12. See, also, Schwartz v. Bank One, Portsmouth, N.A. (1992), 84 Ohio App.3d 806,809.
 {¶ 17} The burden of showing that no genuine issue of material fact exists falls upon the party requesting summary judgment. Dresher v.Burt (1996), 75 Ohio St.3d 280, 294, citing Mitseff v. Wheeler (1988)38 Ohio St.3d 112, 115. The moving party bears this burden even for issues for which the nonmoving party may bear the burden of proof at trial. Id. "However, once the movant has supported his motion with appropriate evidentiary materials, the nonmoving party may not rely upon the allegations and/or denials in his pleadings. * * * He must present evidentiary materials showing that a material issue of fact does exist."Morehead v. Conley, 75 Ohio App.3d at 413.
 III. {¶ 18} Albert's first assignment of error is that the doctrine of part performance operates to allow enforcement of the alleged oral contract for transfer of the real estate. Calvin, Oliver, and Gladys assert that the probate court properly found that Albert's claim failed because he failed to file it within three months of his appointment as co-executor, as required by R.C. 2117.02. Additionally, they argue even if Albert timely filed his claim, the statute of frauds bars it.
 {¶ 19} R.C. 2117.02 requires the executor or administrator of an estate to present any claim that he may have against the estate to the probate court within three months after the date of his appointment. The courts of Ohio have interpreted this statute as a statute of limitations, and accordingly have held that its application is mandatory. See, Allen v. Hunter (1964), 1 Ohio App.2d 278, 280.
 {¶ 20} The Ohio Supreme Court has previously noted that "[w]here the term `owner' is employed with reference to land or buildings, it is commonly understood to mean the person who holds the legal title." Bloomv. Wides (1955), 164 Ohio St. 138, 141. Here, the record reflects that Father was the record owner of three parcels of real estate at the time of his death. Therefore, the co-executors properly included the real estate in the estate inventory. If Albert wished to assert any claim challenging his Father's ownership of the real estate, he had to do so within three months of his appointment as co-executor of the estate as required by R.C. 2117.02. The record clearly reflects that Albert failed to file any claim against the estate alleging a right to the real property during the three-month period immediately following his appointment as co-executor. In fact, he did not assert such a claim until he filed his answer, counterclaim and cross-claim on July 26, 2002, more than one year after his appointment. Therefore, we find that Albert's claim against the estate for specific performance of the alleged oral contract to transfer the farms is time barred, and accordingly overrule his first assignment of error. Because we find that Albert's real estate claim is time barred, we decline to address the merits of his part-performance argument.
 IV. {¶ 21} In his second assignment of error, Albert alleges that self-dealing and/or fraud on the part of his siblings somehow excuses the belated filing of his claim against the estate. We disagree. Civ.R. 8(C) provides that a party "shall set forth" affirmative defenses such as fraud in his responsive pleading. Ohio Courts have consistently held that failure to plead an affirmative defense constitutes a waiver of that defense. Houser v. Ohio Historical Society (1980), 62 Ohio St.2d 77, 79, citations omitted; McSweeney v. Jackson (1996), 117 Ohio App.3d 623,628-29.
 {¶ 22} Here, we find that Albert failed to raise the issue of fraud at the appropriate time. He did not raise fraud as an affirmative defense in his answer, nor did he raise it as a cause of action in his counterclaim or cross-claim. Accordingly, we find that he waived his right to raise fraud as a defense in his response to the summary judgment motion. See, Pocius v. Stankus (Oct. 26, 1994), Summit App. Nos. 16759 and 16812.
 {¶ 23} Even if we were to determine that Albert timely raised his allegations of fraud, we find that they lack merit. Albert first alleges that his siblings fraudulently made the initial probate filing in Fairfield County on February 28, 2001, and further alleges that date was six days before their Father died. Our review of the record reveals that Father died on February 3, 2001, twenty-five days before the initial probate filing. Therefore, we find no evidence of fraud in the date of the initial probate filings.
 {¶ 24} Albert also alleges that the application for authority to administer the estate, as filed by his siblings in Fairfield County, bears a signature purporting to be his, when he did not sign the document. We note that Albert failed to provide any evidence, other than his own bare allegations, to support this contention. The alleged copy of the document, attached to his response to the motion for summary judgment, was not properly sworn or certified as required by Civ.R. 56(E). Further, we note that the copies from Fairfield County contained in the original Hocking County Probate Court file do not bear Albert's signature. Accordingly, we find no evidence in the record to support Albert's allegation that his siblings fraudulently filed documents in the Fairfield County probate proceeding bearing his forged signature.
 {¶ 25} Albert's final allegation of fraud is that the law firm representing his Father's estate breached a fiduciary duty to him by failing to inform him that he would have to file "exceptions" to "protect his property." Albert claims that this alleged failure allowed his siblings to "self deal" by allegedly including property within the estate that they knew Albert claimed to own. The initial probate filing in Fairfield County occurred on February 28, 2001. In his brief, Albert admits that upon the urging of counsel for the estate, he obtained separate legal counsel. The record further reflects that Albert's separate counsel made an appearance in the Fairfield County case on March 16, 2001. This appearance was a little more than two weeks after the initial probate filing, almost four months before the Hocking County Probate Court appointed Albert as co-executor of his Father's estate, and almost seven months before Albert's claim against the estate should have been filed. The record further reflects that Albert had separate legal counsel throughout the course of this litigation. Accordingly, counsel for the estate could reasonably conclude that Albert's own counsel would be aware, and notify Albert of all applicable deadlines.
 V. {¶ 26} In his third assignment of error, Albert contends that Calvin, Oliver, and Gladys failed to offer any proof to establish that the estate owned any of the disputed personal property. In their brief, Calvin, Oliver, and Gladys present no argument that the estate owns the disputed personal property. Rather, they argue that Albert has "admitted that the real estate is property of the Estate" through various court documents and his failure to timely file exceptions to the estate inventory. However, because these arguments are equally applicable to the disputed personal property discussed in Albert's third assignment of error, we construe Calvin, Oliver, and Gladys' arguments to encompass both the real and personal property.
 {¶ 27} In examining the binding effect of an estate inventory, the First District Court of Appeals has noted "[t]he primary purpose of an inventory is to furnish a list of the property which appears to belong to the decedent and a valuation thereof. It is made on an ex parte investigation and clearly binds no one. Where no exceptions are filed to it, there is no judicial inquiry at all. It is only when exceptions are filed and the jurisdiction of the Probate Court is invoked to inquire into the validity of the schedule of property that the proceeding takes on the character of litigation." Scott v. Mofford (1940), 64 Ohio App. 457,459.
 {¶ 28} Additionally, we note that the only statutory provision regarding the binding effect of the estate inventory provides "[w]hen the inventory required by section 2115.02 of the Revised Code has been approved by the probate court, the appraisement of the real estate as set forth therein shall be conclusive for all purposes except estate tax, unless a reappraisal is ordered by the court." R.C. 2115.17. Accordingly, we find that the inclusion of the disputed personal property in the estate inventory, in the absence of filed exceptions and a hearing thereon, does not constitute a binding determination that the estate owns the property.
 {¶ 29} Here, no one filed exceptions to the inventory. Therefore, the probate court summarily approved the inventory without making a determination that the estate actually owned the listed property. While Calvin, Oliver, and Gladys did submit evidence that their Father owned the disputed real estate at the time of his death, they did not submit such evidence to support their contention that he owned the disputed personal property at the time of his death. Instead, they chose to rely upon their mistaken belief that Albert "admitted" the estate owned the disputed personal property, through his signature on the amended inventory and fiduciary's account, wherein the co-executors listed the property still held by the estate. In the absence of these alleged "admissions", the record is devoid of any evidence tending to demonstrate that Father owned the disputed personal property at the time of his death.
 {¶ 30} Albert, however, did submit his affidavit, wherein he stated that he owned the disputed farm equipment, some of which he purchased himself, and some of which he purchased from his Father. He also submitted the affidavit of his cousin, John Poling, to demonstrate that his siblings were aware that he owned the farm machinery, but still chose to include it in the estate inventory. In that affidavit, John Poling states that immediately following the November 26, 2001 hearing, Oliver told him that the machinery was included in the estate inventory due to the fact that Father had lost money in the stock market. The affidavit also states Calvin and Oliver told John Poling that "their belief that Albert had received more from his father during his father's lifetime justified putting the machinery in the estate." Accordingly, construing the evidence most strongly in favor of Albert, we find that a genuine issue of material fact remains, and that Calvin, Oliver, and Gladys are not entitled to judgment as a matter of law with regard to the ownership of the disputed personal property.
 {¶ 31} Additionally, we disagree with Calvin, Oliver, and Gladys' assertion that due to Albert's repeated failure to timely file exceptions to the inventory, his claim of ownership of the disputed personal property is time barred. The Ohio Supreme Court has recognized the power of a probate court to determine title to personal property included in an estate inventory in the course of a hearing on exceptions to the inventory. In re Gottwald's Estate (1956), 164 Ohio St. 405, paragraph two of the syllabus. Yet, the Court has also explicitly recognized that there may be other remedies available to an exceptor. Id. One remedy expressly recognized by the Ohio Supreme Court is a declaratory judgment action to recover personal property wrongfully held by an estate. See,Service Transport Co. v. Matyas (1953), 159 Ohio St. 300, at syllabus.
 {¶ 32} The declaratory judgment action recognized by the Ohio Supreme Court is essentially an action for replevin[1], as provided by R.C. 2737.01, et seq. It is not a claim of an interest in any part of the assets rightfully found in the estate, but an action to recover assets alleged to be wrongfully held in the estate. "[E]xecutors have no right or power to administer assets which do not belong to [an] estate." Staleyv. Kreinbihl (1949), 152 Ohio St. 315, 327.
 {¶ 33} Additionally, the Ohio Supreme Court has found that a claim of ownership of personal property is not a creditor's claim within the meaning of R.C. 2117.06, which requires the presentment of creditor's claims to the estate within one year of the death of the decedent. Lewisv. Steinreich (1995), 73 Ohio St.3d 299, 302. "When property held by the decedent at the time of her death is actually owned by another from whom possession is wrongfully withheld, such property is not property belonging to the estate and the party claiming ownership is not a creditor of the estate." Id., citing Spaceway Distrib. Storage Co., Inc. v.Williamson (1987), 41 Ohio App.3d 187, 190; Service Transport Co. v.Matyas (1953), 159 Ohio St. 300, 303. Accordingly, the Supreme Court has held that the presentment requirements of R.C. 2117.06, the creditor's claim statute, cannot be applied to bar the claim of an owner who seeks to recover assets wrongfully held in an estate. Id. The Court reasoned "claims concerning title and ownership may not surface for many years after a transaction takes place, making it more likely that valid ownership claims will be cut off by the intervening death of a principal to the transaction if R.C. 2117.06 is so applied." Id.
 {¶ 34} Here, the application for authority to administer the estate, filed on July 6, 2001, estimated the value of the personal property within the estate at $0.00. It was not until the initial inventory was filed that the disputed items of farm equipment were mentioned. Further, the initial inventory reveals that the disputed items were in Albert's possession at the time of filing. Therefore, the record reflects that Albert had no reason to know that the ownership of the personal property was in dispute until the first estate inventory was filed on October 12, 2001 — six days after he was required to present a claim to the probate court pursuant to R.C. 2117.02.
 {¶ 35} We find the Supreme Court's reasoning in Lewis to be equally applicable to the facts of this case, and, therefore, find that Albert's claim of ownership of personal property is not an executor's claim within the meaning of R.C. 2117.02. Accordingly, we hold that the presentment requirements of R.C. 2117.02 do not bar Albert's claim to recover personalty wrongfully held in his Father's estate, and sustain his third assignment of error.
 VI. {¶ 36} In conclusion, because we find that Albert's claim against the estate for specific performance of the alleged oral contract to transfer the farms is time barred, and he failed to timely raise fraud as an affirmative defense, we overrule his first two assignments of error. However, we find that Calvin, Oliver, and Gladys failed to satisfy their burden of demonstrating that there was no issue of material fact as to the ownership of the disputed personal property. We also find that this claim was not time barred. Accordingly, we sustain Albert's third assignment of error and remand this cause to the trial court for further proceedings consistent with this opinion.
JUDGMENT AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART AND REVERSED IN PART and the cause remanded to the trial court for further proceedings consistent with this opinion and that costs herein be taxed equally between the parties.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Hocking County Probate Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
Evans, P.J. and Abele, J.: Concur in Judgment and Opinion.
[1] Replevin is "[a]n action whereby the owner or person entitled to repossession of goods or chattels may recover those goods or chattels from one who has wrongfully distrained or taken or who wrongfully detains such goods or chattels." Black's Law Dictionary 1299 (6th ed. 1990).