[Cite as *In re Estate of Bohl*, 2016-Ohio-637.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BROWN COUNTY

IN RE: :

    ESTATE OF RUBY BOHL a.k.a. :    CASE NOS. CA2015-01-005
    Ruby Lee Bohl                                 CA2015-01-006

                                    :        O P I N I O N
                                            2/22/2016

                                    :

                                    :

APPEAL FROM BROWN COUNTY COURT OF COMMON PLEAS
PROBATE DIVISION
Case No. 2012 1154

T. David Burgess, 110 North Third Street, Williamsburg, Ohio 45176-1322, for appellant/cross-appellee, Larry Bohl, Executor

John Woliver, 204 North Street, Batavia, Ohio 45103, for appellee/cross-appellant, Pamela Throckmorton

**RINGLAND, J.**

{¶ 1} Appellant/cross-appellee, Larry Bohl ("Larry"), appeals from the judgment of the Brown County Court of Common Pleas, Probate Division, denying his claim for reimbursement of certain expenses against the estate of his deceased mother, Ruby Bohl ("Ruby"). Appellee/cross-appellant, Pamela Throckmorton ("Pamela"), who is one of Larry's two sisters, cross-appeals from the same judgment that allowed some of the claims made by Larry and their sister, Shirley Mardis ("Shirley"), for reimbursement of certain expenses

against Ruby's estate. For the reasons that follow, we affirm in part and reverse in part the judgment of the probate court, and remand the matter for further proceedings.

{¶ 2} Ruby and her husband, Clarence Bohl ("Clarence"), owned a 115-acre farm in Georgetown, Ohio. They had four children: Larry, Shirley, Pamela, and Roger Bohl ("Roger"). All of the children eventually moved away from the farm except Larry, who, except for a brief stint in the service, has lived and worked at the farm all of his life. In addition to helping his parents with farm-related duties, Larry also worked full-time at Cincinnati Milacron until 2007, at which time he took early retirement.

{¶ 3} The total income from the farm that Ruby and Clarence received during Clarence's lifetime came from raising tobacco and selling it during the fall, or selling cattle or hogs periodically during the year. Money was always an issue for Clarence and Ruby, and neither of them paid enough into Social Security to entitle them to any payments from that program at the time of their retirement.

{¶ 4} Clarence passed away in September 2004. At the time of his death, the last two cows had been sold and there were no hogs. Larry raised the tobacco crop that year, but the crop would not be sold until the following year. The only income that Ruby received following Clarence's death came from a "tobacco buyout" program funded by major tobacco companies at the government's behest, which was designed to encourage tobacco farmers like the Bohls not to raise tobacco. From 2005 until 2011, Ruby received a total of $12,370.53 as a result of the tobacco buyout, giving her a monthly average payment of $128.86.

{¶ 5} Ruby died in July 2012 at the age of 93. Ruby's will named Larry as her executor, and directed that her estate, which consisted primarily of the 115-acre farm, be divided equally among Larry, Pamela, Shirley, and Roger. Larry was formally appointed by the probate court as executor of Ruby's will on August 15, 2012. In November 2012, Larry

submitted a claim for reimbursement against the estate for $101,084.20. The amount consisted of $45,556.32 in medical bills for Ruby, from 2004 to 2011; $38,218.22 in "farm maintenance bills," from 2004 to 2012; $8,329 in farm insurance, from 2004 to 2012; and $8,980.66 in real estate taxes, from 2005 to 2012. In January 2013, Shirley submitted a claim for reimbursement against Ruby's estate for $32,600 that she paid to Larry to help him pay for a home caregiver, Lugene Teal, whom Larry hired for Ruby prior to her death. Pamela objected to Larry's and Shirley's claims against the estate.

{¶ 6} A hearing was held by a magistrate on Pamela's objections over two days. Near the start of the first day of the hearing, Larry moved to amend his claim, pursuant to Civ.R. 15(B) and (C), to seek an additional $17,170.55 in reimbursement against Ruby's estate for paying for a portion of the expense of Ruby's home caregiver. Larry made the motion to amend his claim after noticing that while he had paid Ruby's home caregiver a total of $49,770.55, Shirley was making a claim for reimbursement of only $32,600 for helping him pay for the home caregiver. Upon realizing that the $17,170.55 difference between these two amounts came out of his own pocket, Larry moved to amend his claim against Ruby's estate for this amount.

{¶ 7} During the hearing, Larry was permitted to testify, over the continuing objection of Pamela's attorney, that he had an "understanding" or "agreement" with his parents that since he had always lived at the farm and would continue to do so, he would "maintain the farm" and "take care of [his parents] * * * until they passed," and "would file a claim against the estate when the time arose[,]" and that he would "be reimbursed for those expenses." Later, when Pamela's attorney asked Larry on cross-examination, "What was your prior testimony about filing a claim?" Larry answered as follows:

> [M]y mom, my dad, and myself had an agreement that I could
> stay there on the farm as long as -- and you know, they knew it
> was going to cost money to keep the farm up. They knew that

they were going to incur medical costs. That I would pay their --
their bills and I would pay to maintain the farm in its present
condition, and when they were gone that I would present a claim
to be reimbursed those expenses.

{¶ 8} The magistrate found that Larry's claim for reimbursement of $101,084.20 was based on an "understanding" he had with Ruby that he would pay Ruby's expenses "due to her lack of financial resources and would make a claim against her estate after her passing[,]" and that Larry's claim was "for the preservation of the assets of the estate, namely, the farm." The magistrate determined that the "understanding" between Larry and Ruby constituted an "express contract," for purposes of *Hinkle v. Sage*, 67 Ohio St. 256 (1902). The magistrate also determined that Shirley was entitled to her claim for reimbursement of the $32,600 she paid to Larry to help pay for Ruby's home caregiver. Lastly, the magistrate determined that Larry was permitted, under Civ.R. 15(B) and (C), to amend his claim to seek an additional $17,170.55 in reimbursement that he paid to Ruby's home caregiver out of his own pocket and that Larry was entitled to be reimbursed for that additional amount.

{¶ 9} Pamela filed objections to the magistrate's decision. The probate court overruled Pamela's objections to Larry's claim for reimbursement of $45,556.32 for paying Ruby's medical bills and to Shirley's claim for reimbursement of $32,600 for helping pay for Ruby's home caregiver. However, the probate court sustained Pamela's objection to Larry's claim for reimbursement for farm maintenance expenses, farm insurance, and real estate taxes. The probate court noted that Larry had claimed the farm expenses as tax deductions while he lived at the family farm, rent free, and had claimed Ruby as a dependent on his income tax returns. The probate court concluded that "[t]o permit [Larry] those claims would be enforcing an agreement he says took place for which the court has no written evidence and for which there is case law directly on point." The probate court also sustained Pamela's

objection to Larry's claim for reimbursement of $17,170.55 for paying a portion of the cost of Ruby's home caregiver, because the claim was presented "past the allowable time."

{¶ 10} Larry now appeals, raising the following assignments of error:

{¶ 11} Assignment of Error No. 1:

{¶ 12} THE COURT ERRED AS A MATTER OF LAW BY REQUIRING THE APPELLANT TO PRODUCE A WRITTEN AGREEMENT WHERE THE CLAIM WAS NOT FOR SERVICES BUT FOR REIMBURSEMENT FOR FUNDS EXPENDED ACCORDING TO THE AGREEMENT.

{¶ 13} Assignment of Error No. 2:

{¶ 14} THE COURT ERRED IN FAILING TO RECOGNIZE THE CLAIMS BY THE APPELLANT WERE NOT FOR SERVICES PROVIDED TO A FAMILY MEMBER BUT WERE FOR EXPENSES PAID ACCORDING TO AN AGREEMENT AND CONTRACT PRINCIPLES.

{¶ 15} Assignment of Error No. 3:

{¶ 16} THE COURT ERRED IN DENYING THE AMENDMENT OF THE APPELLANT'S CLAIM FOR REIMBURSEMENT OF MONEY PAID FOR HOME CARE TO A THIRD PARTY.

{¶ 17} Pamela cross-appeals, assigning the following as error:

{¶ 18} THE TRIAL COURT ERRED IN BY [*sic*] ALLOWING THE CLAIMS FOR MEDICAL BILLS PAID BY APPELLANT LARRY BOHL AND THE CLAIM FOR CARE SERVICES PAID BY APPELLEE SHIRLEY MARDIS.

{¶ 19} In his first assignment of error, Larry argues the probate court erred by requiring him to produce a *written* agreement to prove his claim for reimbursement of certain expenses against Ruby's estate, because, contrary to what the probate court found, *Hinkle* does not

require that such an agreement be in writing.

{¶ 20} In *Hinkle*, 67 Ohio St. 256, paragraphs one and two of the syllabus, the Ohio Supreme Court discussed the effect of the "family member" or "family relationship" rule in actions brought by one family member to recover compensation for services provided to another family member, as follows:

> 1. In an action to recover compensation for services, when it appears that the plaintiff was a member of the family of the person for whom the services were rendered, no obligation to pay for the services will be implied*; and the plaintiff cannot recover in such case unless it be established that there was an *express* contract upon the one side to perform the services for compensation, and upon the other side to accept the services and pay for them.
>
> 2. *Such contract may be in writing or it may rest entirely in parol*, and it may be proved by direct or indirect evidence; but to entitle the plaintiff to recover, the contract must be established by clear and unequivocal proof.

(Emphasis added.) Thirteen years later, in *Merrick v. Ditzler*, 91 Ohio St. 256 (1915), paragraph two of the syllabus, the court modified the standard of proof needed to prove an express contract in cases where the family member rule applied, from "clear and unequivocal" to "clear and convincing."

{¶ 21} Under the family member rule, "the general inference or presumption that the rendering of services brings forth an obligation to pay compensation is replaced by the inference or presumption that the rendering of services between family members is gratuitous." *Sabin v. Graves*, 86 Ohio App.3d 628, 632 (1993), citing *Merrick* at 263 and Annotation (1949), 7 A.L.R.2d 8, 12, Section 1. The presumption that the rendering of services between family members is gratuitous can be overcome by establishing, by clear and convincing evidence, the existence of an express contract that calls upon one family member to perform services for compensation and that calls upon another family member to accept those services and pay for them. *Hinkle* at paragraph one of the syllabus. The Ohio

Supreme Court explained in *Hinkle* that the rationale for this rule is that "[c]ases of this kind are odious, and are not favored by the courts, because they afford opportunity for fraud against the estates of deceased persons, and great temptation to perjury, by disappointed or avaricious relatives." *Id.* at 262.

**{¶ 22}** Here, it is clear that the probate court construed *Hinkle* as requiring that express contracts between family members be written, in order to be enforceable. The probate court noted that Pamela had cited *Hinkle* "for the proposition that only if a written agreement is presented should a family member be reimbursed for caring for a decedent." The probate court also noted that "[i]t is not disputed that no written agreement was ever executed," in this case. The probate court then ruled that "to permit [Larry his claims for farm maintenance expenses, farm insurance, and real estate taxes] would be enforcing an agreement he says took place for which the court has no written evidence and for which there is case law directly on point." Thus, it is clear that the probate court rejected Larry's claims against Ruby's estate on the basis that there was no written contract between Larry and his parents. However, *Hinkle* explicitly states that the express contract that is required to exist to allow one family member to recover compensation for services performed for another family member "may be in writing *or it may rest entirely in parol*[.]"[1] (Emphasis added.) *Hinkle* at paragraph two of the syllabus. The probate court erred in concluding otherwise.

**{¶ 23}** Next, Larry asserts that the claims he is raising against Ruby's estate are not actually governed by *Hinkle*, because that decision governs claims for reimbursement for *services* rendered to a family member but not claims for reimbursement for paying *expenses* of a family member.

**{¶ 24}** For purposes of the family member rule set forth in *Hinkle*, the term "services,"

---

1. See *Howard v. Thomas*, 12 Ohio St. 201, 204-205 (1861) (indicating that "parol evidence" means "oral evidence"), and Black's Law Dictionary, 1149 (8th Ed.2004).

has been traditionally defined to include the services for which the plaintiff in *Hinkle* sought compensation, i.e., housekeeping and nursing care. *Hinkle* at 256. See also, *Merrick*, 91 Ohio St. at 257 (plaintiff worked in defendant's hay, wheat, and corn fields; cared for defendant's children; and performed household duties). Courts in this state and elsewhere seldom define what type of services are included in the family member rule. As explained by one commentator who has reviewed the case law on this subject in a number of states,

> [a]lthough general statements may be found in the cases that "services," or "personal services," or "domestic services," rendered by one member of a family to another are presumed to be gratuitous, the courts, generally, do not set up any specific standard for determining just what type of services will be presumed to be gratuitous. In the majority of cases the question as to the validity of a claim for services rendered by a member of a family seems to be treated simply as one of fact as to whether there was an understanding of the parties that compensation was to be made, with due consideration given to the nature of the services in the determination of this question.
>
> Since the family relationship is the dominant consideration in determining the applicability of the presumption, it seems that the most desirable and logical view would be that the presumption would be applicable only when it is shown that the services were such as members of a family usually and ordinarily render to each other.

Annotation, *Recovery For Services Rendered By Member of Household or Family Other Than Spouse Without Express Agreement For Compensation*, 7 A.L.R.2d 8, Section 10 (originally published in 1949).

{¶ 25} Courts in other states have held that services by a child to a parent will give rise to an implied contract if the services provided are so "extraordinary" that the parent would not reasonably expect the child to render such services without compensation. See *Craig v. Hickman*, 247 Ark. 628 (1969); *Russell v. Baumann*, 239 Ark. 830 (1965), both of which are cited in Annotation, 7 A.L.R.2d 8, Section 10. However, we are not aware of any case that has defined the term "services" in the context of the family member rule to include the type of

claim that Larry is raising against Ruby's estate in this case, i.e., that he is entitled to be reimbursed for more than $100,000 for expenses he paid on Ruby's behalf, pursuant to their alleged, oral contract.

{¶ 26} Nevertheless, because the oral contract involved in the present case is between family members, the same concerns identified in *Hinkle* at 262, i.e., that these types of cases are "odious" and "not favored" by the courts since they afford opportunity for fraud against the estates of deceased persons and great temptation for disappointed or "avaricious" relatives to commit perjury, are present in this type of situation. Consequently, we believe that the rule in *Hinkle*, as modified by *Merrick*, should be applied to the transaction at issue. Therefore, it was incumbent on Larry to establish, by clear and convincing evidence, that there was an express contract between him and Ruby that called upon him to pay for Ruby's expenses, with the understanding that he would seek payment from Ruby's estate upon her death, and that called upon Ruby to accept Larry's payment of the expenses and to allow him to continue to live at the farm and operate his farming business there, rent free. *Hinkle*, 67 Ohio St. 256, paragraph one of the syllabus. Additionally, the express contract could be unwritten or oral; it did not need to be in writing. *Id.* at paragraph two of the syllabus. Lastly, as Larry himself acknowledges in his brief, the express contract in this type of case has to be established by "clear and convincing" evidence. *Merrick*, 91 Ohio St. 256, paragraph two of the syllabus.

{¶ 27} Pamela acknowledges that *Hinkle* does not require that the express contract be in writing. Nevertheless, Pamela contends that Larry's claim rests primarily on his testimony at the hearing regarding assurances made to him by their parents, which she argues was inadmissible under Evid.R. 804(B)(5). Pamela alleges that Evid.R. 804(B)(5) "greatly restricts the testimony of statements made by a deceased or incompetent person and will not permit a claimant to testify to the existence of a binding oral contract allegedly made by the deceased

in support of a claim against the estate." Pamela further alleges, without citation to authority, that "with the application of [Evidence] Rule 804(B)(5), a family member's claim for compensation for services necessarily would require the existence of a written contract." We disagree with this argument.

{¶ 28} Evid.R. 804(B)(5) states as follows:

*Statement by a deceased or incompetent person.* The statement was made by a decedent or a mentally incompetent person, where all of the following apply:

(a) the estate or personal representative of the decedent's estate or the guardian or trustee of the incompetent person is a party;

(b) the statement was made before the death or the development of the incompetency;

(c) the statement is offered to rebut testimony by an adverse party on a matter within the knowledge of the decedent or incompetent person.

{¶ 29} Contrary to what Pamela contends, Evid.R. 804(B)(5) does not exclude evidence of statements by a decedent; instead, the rule merely "creates an exception [to the hearsay rule] to permit introduction into evidence of statements by a decedent that might otherwise be excluded as hearsay." *Richards v. Wasylyshyn*, 6th Dist. Lucas No. L-11-1037, 2012-Ohio-3733, ¶18. Specifically, Evid.R. 804(B)(5) establishes "a hearsay exception for the declarations of a decedent which rebut testimony of an adverse party and is available only to the party substituting for the decedent [e.g. an executor or representative]." *Testa v. Roberts*, 44 Ohio App.3d 161, 167 (6th Dist.1988).

{¶ 30} We acknowledge that the statements that Clarence and Ruby made to Larry at the time they entered into their alleged oral contract were not admissible under the hearsay exception contained in Evid.R. 804(B)(5). However, the magistrate did not rely on Evid.R. 804(B)(5) to support his decision to allow Larry to testify about the oral agreement he reached with his parents before his father's death. Instead, the magistrate determined that

Larry's testimony about his conversations with his deceased parents was admissible because it helped explain Larry's understanding of the terms of the oral agreement he reached with his parents. The magistrate essentially determined that the statements made by Larry's deceased parents were not offered for the truth of the matter asserted, and thus, were not hearsay under Evid.R. 801(C).

{¶ 31} Additionally, while the probate court noted that Evid.R. 804(B)(5) had been raised as an issue in the case, the probate court did not rule on that issue, since it decided the matter on the basis of its erroneous belief that *Hinkle* requires express contracts between family members to be in writing. However, the probate court did not overrule the part of the magistrate's decision that allowed Larry's testimony about his conversation with his parents regarding their alleged oral contract, nor did the probate court err in failing to do so. In light of the foregoing, we conclude that Evid.R. 804(B)(5) has no application to this case.

{¶ 32} Pamela also argues that Larry's arguments should fail because the terms of his alleged oral contract with Ruby "are far less than definite binding promises." We find this argument unpersuasive.

{¶ 33} To be binding, a contract must be definite and certain. *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations*, 61 Ohio St. 3d 366, 369 (1991). While the parties need not agree on every conceivable circumstance that might arise in order for a contract to exist, they must agree on the contract's "essential terms." *Nilavar v. Osborn*, 127 Ohio App. 3d 1, 13-14 (2d Dist.1998), modified on reconsideration. Thus, a valid contract must be specific as to its essential terms. *Alligood v. Procter & Gamble Co.*, 72 Ohio App. 3d 309, 311 (1st Dist.1991). In a contract that is not for goods, the essential terms are, generally, the parties to the contract and its subject matter. *Mantia v. House*, 178 Ohio App. 3d 763, 2008-Ohio-5374, ¶ 9 (2d Dist.2008). A person cannot be subject to a contractual obligation unless the character of the obligation is definitely fixed by the parties' express or

implied agreement. *General Motors Corp. v. Keener Motors, Inc.*, 194 F.2d 669, 676 (6th Cir. 1952). An agreement is sufficiently certain for enforcement if it provides a basis for determining the existence of a breach and for giving an appropriate remedy. *Mantia*.

{¶ 34} Here, the alleged oral contract identified the names of the parties (Larry and Ruby) and its subject matter. *Id.* The contract was fixed by an express agreement between the parties. *General Motors Corp.* The contract also provides a basis for determining the existence of a breach and for giving an appropriate remedy. *Mantia*. We also note that oral contracts between persons that call upon one of the parties to provide services for another and then seek compensation from that other parties' estate are enforceable. Thus, in *Moore v. Curtzweiler*, 165 Ohio St. 194, 195-198 (1956), the Ohio Supreme Court indicated that an alleged oral contract in which a woman performed cleaning and nursing services for a man who had cancer, with the expectation that she was to receive payment out of the man's estate at the time of his death, was not an unenforceable oral contract to make a will, but instead, was an enforceable oral contract.[2]

{¶ 35} Larry also asserts that the magistrate "was the sole judge of the credibility of the witnesses[,]" since the magistrate was in the best position to judge the witnesses' believability by their appearance and manner of testifying, and the reasonableness of their testimony. Therefore, Larry asserts that the probate court erred in not overruling Pamela's objection to his claim against the estate, and he requests that we reverse the probate court and reinstate the magistrate's decision. We decline to do so.

{¶ 36} Larry's contention that the magistrate in this case "was the sole judge of the credibility of the witnesses" is clearly incorrect. While the trial court is permitted to give weight to the magistrate's assessment of the credibility of witnesses in view of the

---

2. R.C. 2107.04 provides that "[n]o agreement to make a will or to make a devise or bequest by will shall be enforceable unless it is in writing." *Moore* at 198.

magistrate's firsthand exposure to their testimony, the trial court must still independently assess the evidence and reach its own conclusions on the matter. *Siegel v. Univ. of Cincinnati College of Medicine*, 10th Dist. Franklin No. 14AP-279, 2015-Ohio-441, ¶ 12. A magistrate is "an arm of the court" whose decisions carry a "presumption of correctness," but the trial court is not required to adopt the magistrate's decision. *Cox v. Cox*, 12th Dist. Fayette No. CA98-05-007, 1999 WL 74573, *3 (Feb. 16, 1999). When a party files objections to the magistrate's decision, the trial court must conduct an independent analysis to ascertain whether the magistrate has properly determined the factual issues and properly applied the law to those factual findings. *Inman v. Inman*, 101 Ohio App.3d 115, 118 (2d Dist.1995). The trial court's review of the record is de novo. *Cox.* Upon conducting that de novo review, the trial court may "adopt, reject, or modify the magistrate's decision, hear additional evidence, recommit the matter to the magistrate with instruction, or hear the matter." Civ.R. 53(E)(4)(b).

{¶ 37} Here, we have not concluded that the probate court erred in failing to enforce the alleged oral contract between Larry and Ruby. Instead, we are finding that the probate court erred in determining that the alleged oral contract between them was unenforceable since it was not a written agreement. Therefore, we are remanding this case to the probate court with instructions that it consider whether Larry proved that he and Ruby reached an express contract, as the magistrate determined, and whether the alleged, express contract between them is unenforceable for some reason other than the ones we have rejected above.

{¶ 38} In light of the foregoing, Larry's first assignment of error is sustained to the extent indicated.

{¶ 39} In his second assignment of error, Larry asserts that the probate court erred by not granting his claim based on the principles of unjust enrichment. We disagree.

{¶ 40} "In order to recover on a claim of unjust enrichment, the party asserting the claim must demonstrate: (1) a benefit conferred by a plaintiff upon a defendant, (2) knowledge by defendant of the benefit, and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Aztec Internatl. Foods, Inc. v. Duenas,* 12th Dist. Clermont No. CA2012-01-002, 2013-Ohio-450, ¶ 75. See also, *Hambleton v. R.G. Barry Corp.,* 12 Ohio St.3d 179, 183 (1984).

{¶ 41} Here, Larry cannot establish the third element necessary to prove an unjust enrichment claim, to wit: he cannot show that allowing Ruby's estate to retain any benefit that Larry may have bestowed upon it by paying the farm maintenance expenses, farm insurance, and real estate taxes would be unjust without payment under the circumstances. Larry resided on his parents' property and operated his farming business there, rent free, for many years. Not only did Larry not pay any rent to Ruby, he claimed her as a dependent on his tax returns. Larry also derived a benefit from paying the farm expenses by reporting them as deductions from his farm income. The record shows that Larry treated the family farm as his farm and any losses from the farm as his deductible farm losses. It is simply not equitable to allow Larry to obtain a double benefit by allowing him to be reimbursed for paying the expenses in question after he already availed himself of the tax deductions for paying them. Although Larry claims he can undo the benefit he received from claiming the expenses as tax deductions by "unclaiming" these expenses once he receives payment from the estate, the fact remains that the evidence shows that he used these expenses, along with the farm itself, as if they were his own.

{¶ 42} Consequently, Larry's second assignment of error is overruled.

{¶ 43} In his third assignment of error, Larry contends that the probate court erred in refusing to allow him to amend his claim against Ruby's estate, under Civ.R. 15(B), to include a claim for reimbursement against Ruby's estate for the $17,170.55 he paid out of his own

pocket for Ruby's home caregiver expense, which would then, under Civ.R. 15(C), "relate back" to the time he filed his original claim against the estate, thereby making the amended claim timely under R.C. 2117.02.

{¶ 44} The probate court disallowed Larry's claim for an additional $17,170.55 in reimbursement from Ruby's estate for the reason that the claim was filed "past the allowable time," apparently, referring to the limitations period in R.C. 2117.02. That statute provides that "[a]n executor or administrator within three months after the date of appointment shall present any claim the executor or administrator has against the estate to the probate court for allowance." The courts in this state have interpreted R.C. 2117.02 as a statute of limitations. *Poling v. Poling*, 4th Dist. Hocking No. 03CA3, 2003-Ohio-5601, ¶ 19, citing *Allen v. Hunter*, 1 Ohio App.2d 278 (1964); *In re Estate of Waterman*, 2d Dist. Champaign No. 2002-CA-28, 2003-Ohio-3406, ¶ 7. This court has stated that "the provisions of R.C. 2117.01 through 2117.04 are mandatory and provide the exclusive method for presentation and allowance of claims by an executor against the estate which he represents." *Wilhoit v. Powell's Estate*, 70 Ohio App. 2d 61, 63-64 (12th Dist.1980).

{¶ 45} R.C. 2101.32 provides that "[t]he Rules of Civil Procedure shall govern actions and proceedings in the probate court as provided in Civil Rule 73." Civ.R. 73(A) states that the Ohio Rules of Civil Procedure "shall apply to proceedings in the probate division of the court of common pleas as indicated in this rule. Additionally, all of the Rules of Civil Procedure, though not specifically mentioned in this rule, shall apply *except to the extent that by their nature they would be clearly inapplicable*." (Emphasis added.) The 1970 Staff Notes to Civ.R. 73 state, in pertinent part, as follows:

> Certainly the Rules of Civil Procedure are clearly inapplicable to many of the ministerial procedures of the probate division such as the preparation of an inventory, a schedule of debts, or a final account. On the other hand, any of the Civil Rules will be applicable to adversary proceedings within the jurisdiction of the

probate division, particularly those proceedings governed through reference back by former statutes of civil procedure now superseded by the Civil Rules. Examples of such proceedings are: land sales (Chapter 2127. R.C.), will construction (§ 2107.40, R.C.), determination of heirship (Chapter 2123, R.C.), and declaratory judgment (Chapter 2721, R.C.).

**{¶ 46}** Civ.R. 15 states, in pertinent part, as follows:

**(B) Amendments to conform to the evidence**
When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. Failure to amend as provided herein does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

**(C) Relation back of amendments**
Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

**{¶ 47}** The decision to grant or deny a Civ.R. 15(B) motion to amend pleadings is within the trial court's discretion, and an appellate court will not reverse the trial court's decision absent an abuse of discretion, i.e., the trial court's decision was unreasonable, arbitrary, or unconscionable. *Estate of Everhart v. Everhart*, 12th Dist. Fayette Nos. CA2013-07-019 and CA2013-09-026, 2014-Ohio-2476, ¶ 44.

**{¶ 48}** Here, there is no question that Larry failed to bring his claim for reimbursement for the $17,170.55 within three months of August 15, 2012, the date he was appointed as executor of Ruby's estate. In fact, Larry did not bring this claim until October 22, 2013, the

first day of the hearing held on his claims, which was more than 11 months after he should have presented any claim he had against Ruby's estate. R.C. 2117.02. The question that remains is whether Civ.R. 15(B) and (C), by their nature, would be "clearly inapplicable" to proceedings in probate court regarding an executor's claim against the estate he is representing. Civ.R. 73(A). For the reasons that follow, we conclude that Civ.R. 15(B) and (C) *are* clearly inapplicable to such proceedings.

{¶ 49} One authority has stated that the meaning of Civ. R. 73(A) "is plain: apply the Civil Rules unless common sense and good and sufficient reason dictate otherwise." 1 Marilyn J. Maag, *Ohio Probate Practice and Procedure*, Section 4.03[A], at 4-5 (2015 Ed.). Here, common sense and good and sufficient reason dictate that Civ.R. 15(B) and (C) should not apply to proceedings brought by an executor to bring a claim against the estate that he represents. The purpose of statutes that set forth limitations periods governing the presentment of claims against an estate made by either the estate's executor or by one of its creditors is to facilitate the prompt administration of estates and to bar claimants who, because of "indifference, carelessness, or a dilatory attitude," fail to make an effort to file their claims against the estate on time. *Secrest Citizens Natl. Bank of Norwalk*, 154 Ohio App.3d 245, 2003-Ohio-4731 (6th Dist.2003). The General Assembly has created a three-month statute of limitations period in R.C. 2117.02 for an executor to bring any personal claim he may have against the estate he is representing. Allowing an executor to use Civ.R. 15(B) and (C) to circumvent that statute of limitations would improperly place the decision as to how much time an executor should have to bring his personal claim against the estate he is representing within the discretion of the probate court, while removing that decision from the purview of the General Assembly where the decision properly belongs.[3]

---

3. Compare *Smith v. Klem*, 6 Ohio St.3d 16, 17-18 (1983),(in will contest actions, amendments may be made to a complaint to join necessary parties, pursuant to Civ.R. 15, and such amendments will relate back to the date of

**{¶ 50}** Given the foregoing, Larry's third assignment of error is overruled.

**{¶ 51}** In her cross-assignment of error, Pamela, citing *Hinkle*, argues the probate court erred in approving Larry's claim for reimbursement of $45,556.32 for Ruby's medical expenses, because there was no express contract between Larry and his parents that obligated him to take care of Ruby and that allowed him to seek reimbursement from Ruby's estate in return. Pamela also argues the probate court erred in approving Shirley's claim for reimbursement of $32,600 for helping pay Ruby's home caregiver expense, since Shirley testified that she just wanted to make sure her mother had everything she needed, and thus did not expect to be paid back. We find these arguments unpersuasive.

**{¶ 52}** Ruby's medical bills and the cost of her home caregiver were exclusively for Ruby's care during her lifetime and were easily traceable as expenses that related to providing care for Ruby alone. Larry was entitled to be reimbursed for the medical bills he paid on Ruby's behalf and Shirley was entitled to be reimbursed for the money she gave to Larry to help pay for Ruby's home caregiver, under a theory of unjust enrichment. The evidence shows that (1) Larry, by paying Ruby's medical bills, and Shirley, by helping to pay for Ruby's home caregiver, conferred a benefit on Ruby; (2) Ruby knew of these benefits; and (3) under the circumstances, it would be unjust to permit Ruby's estate to retain those benefits without repayment. *Hambleton*, 12 Ohio St.3d at 183. Thus, the probate court did not err in allowing these claims. Accordingly, Pamela's cross-assignment of error is overruled.

---

the original filing, pursuant to Civ.R. 15[C]; court of appeals erred in finding that resort to Civ.R. 15[C] would operate to extend the jurisdiction of the probate court in violation of Civ.R. 82, since the General Assembly, by enacting R.C. 2107.72, specifically applied the Rules of Civil Procedure to will contest actions, making Civ.R. 15[C] provisions, for the first time, applicable to such actions; the General Assembly must be presumed to have been cognizant of the relation back provisions of Civ.R. 15[C] when it enacted R.C. 2107.72, and thus application of Civ.R. 15[C] to will contest actions no longer operates to expand jurisdiction of probate courts in violation of Civ.R. 82).

**{¶ 53}** The judgment of the probate court is affirmed in part, reversed in part, and this cause is remanded for further proceedings consistent with this opinion.

S. POWELL, P.J., and HENDRICKSON, J., concur.